## New Domain Oil & Gas Company v. Hayes.

(Decided March 7, 1924.)

### Appeal from Lawrence Circuit Court.

Sales—Loan of Oil Well Drilling Machinery Held to Pass Title; "Mutuum."—Where oil well drilling machinery was loaned gratuitously on condition that, if the original articles borrowed should be worn out, then the borrower should replace them with other property of a similar kind, there was a "mutuum,' which is really a sale, and title passed to the borrower, with right of either returning the same property or to replace it, and the lender, or its transferee had no title to property substituted for worn out articles as against one purchasing from borrower.

GARRED & GARRED and GEORGE W. VAUGHN for appellant.

FRED VINSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Sustaining motion for appeal and reversing the judgment.

This is an action brought by the appellee and plaintiff below, Tom Hayes, against the appellant and defendant below, New Domain Oil and Gas Company, to specifically recover from defendant under an order of claim and delivery certain articles of personal property used in connection with drilling oil wells, and alleged in the petition to be of the value of $320.00. Bond was executed and the sheriff, under the writ, took the property from the possession of the defendant and delivered it to the plaintiff. The answer denied plaintiff's ownership of the property and alleged that defendant owned it. The court, on motion of defendant and without objection of plaintiff, transferred the cause to the equity side of the docket and proof was taken by depositions. The case was then submitted and the court held that the property belonged to plaintiff and rendered judgment

accordingly, to reverse which defendant prosecutes this appeal.

Plaintiff did not testify in the case and his main witness was T. N. Clark, who at the time of the transaction, hereinafter referred to, was a partner with J. B. Coghill and they later organized and he became vice-president and general manager of the Table Rock Oil Company and he was also vice-president of another corportion known as Omar Oil and Gas Company. Clark and Coghill were the owners of some oil and gas leases in Lawrence county and after acquiring them and after the commencement of drilling thereon, they incorporated themselves under the name of Table Rock Oil Company, and it finished at least one well and commenced another, when it sold the leases with certain personal property thereon, including that in contest in this action, to the defendant, New Domain Oil and Gas Company. At the time Clark and Coghill commenced to drill on their leases, they borrowed from the Omar Oil and Gas Company, of which Clark was vice-president as stated, and his father was president, certain articles of personal property necessary for drilling purposes corresponding in kind to those involved in this action with the understanding that they were to use the borrowed property in their drilling operations gratuitously and without limitation of time as to its use. As to the agreement, under which the property was borrowed, Clark was asked: "State fully in your way, under what arrangements the tools, drilling rig, drilling machinery and the other equipments were procured for such development," and he answered: "We had an agreement with the Omar Oil and Gas Company, who loaned us the tools and the entire outfit, we were to move it from Louisa, out to the field, and all material worn out or broken during the time we were using them were to be replaced, and we were to replace the tools, machine and entire outfit to Louisa, back to Louisa." After that the Table Rock Oil Company was incorporated and the specific borrowed articles of property, corresponding to those involved here, were worn out and consumed in their use by the borrowers and they purchased and themselves paid for other articles corresponding to them, all of which was done during the existence of the bailment and before it was in any manner terminated, and the sale of the lease, together with the property involved, occurred after that purchase and before the termination.

Mr. Story, in his excellent work on Bailments, devotes chapter IV thereof to "Gratuitous Loans," which he devides into "Commodatum" and "Mutuum," and in sections 219 and 220 he points out the difference between the two, which is that a *commodatum* loan is one wherein the borrower article is to be returned *in specie,* while one coming within the class of *mutuum* is a loan or a borrowing for the purpose of consumption by the borrower, or which he may consume in its use, and to be replaced by him *in kind* at the termination of the bailment. In referring to the former, the text says: "It is defined to be the grant of a thing to be used by the grantee gratuitously for a limited time, and then to be specifically returned;" and each of the two characters of loans come under the general head of a "Loan for Use." In section 220, he gives Lord Holt's definition of *commodatum* as "When goods or chattels, that are useful, are lent to a friend gratis, to be used by him, it is called *commodatum* because the thing is to be restored *in specie.*" In section 228, the learned author, still discussing the two character of loans, says: "The property must be lent to be specifically returned to the lender at the termination of the bailment; and in this respect it differs from a *mutuum,* or a loan for consumption, where the thing borrowed  .  .  .  is to be returned in kind." Mr. Bouvier in his Law Dictionary, in defining *mutuum,* says: "A loan of personal chattels to be consumed by the borrower and to be returned to the lender in kind and quantity." And in defining "Loan for Use," he says: "Loan for use (called *commodatum* in the civil law) differs from a loan for consumption (called *mutuum* in the civil law) in this, that the *commodatum* must be specifically returned, the *mutuum* is to be returned in kind. In the case of a *commodatum,* the property in the thing remains in the lender; in a *mutuum,* the property passes to the borrower."

In 3 R. C. L. 74, the text, in defining the character of relationship created under similar facts, says: "Besides a sale or a bailment, the delivery of property by one person to another may create the relation known in the Roman or continental law as a *mutuum,* or a loan for the consumption or appropriation by the one receiving, or the mutuary, to his own use of the article delivered. In such a case the mutuary is not bound to restore the specific article deposited or loaned but has an option either to return it or another article of the same kind

and quality. In our system of jurisprudence, *mutuum,* while it has some of the characteristics of a bailment, partakes more largely of the nature of a sale and is so treated, since its practical effect must always be to operate as a transfer of title where chattels are deposited, and to create the relation of lender and borrower where money is involved. In the one case it is a sale, with the right in the purchaser to return the thing delivered or its equivalent in kind, though not in specie. In the other it is a deposit of money with the understanding that it is to be surrendered on demand, but with the right in the receiver to use and replace it if he desires.'' Supporting cases in the notes are: Carpenter v. Griffin, 9 Paige (N. Y.) 310, 37 Am. Dec. 396; Chase v. Washburn, 1 Ohio St. 244, 59 Am. Dec. 623; Fosdick v. Greene, 27 Ohio St. 484, 22 Am. Rep. 328; Wright v. Paine, 62 Ala. 340, 34 Am. Rep. 24, and Caldwell v. Hall, 60 Miss. 330, 45 Am. Rep. 410.

It will be observed that the excerpt recognizes the creation of a *mutuum* relationship both as to tangible and intangible personal property, *i. e.,* where the borrower has the right under the agreement either to return the property *in specie* or to replace it in kind, and with reference to the two characters of properties it is said: ''In the one case (tangible personal property) it is a sale, with the right in the purchaser to return the thing delivered or its equivalent in kind, though not in specie. In the other (intangible personal property) it is a deposit of money with the understanding that it is to be surrendered on demand, but with the right in the receiver to use and replace it if he desires;'' and that text is immediately followed by the statement, ''In either case the risk of loss by accident attaches to the depository or mutuary, since he has the control and dominion over the property '' The only exception as to the title of the parties in such a relationship, as is pointed out on page 75 of the same volume, is the deposit of grain in warehouses where it is commingled with other grain of like quality, and that exception is recognized from the force of necessity, it being stated on page 76 that it ''is required by the commercial interests of the country.'' We, therefore, see that the resulting consequences of a *mutuum* transaction on the title to the property are the same whether the property involved is corporeal property, such as chattels, or whether it is incorporeal, as

money or its equivalent.  In the case where a chattel is involved the transaction is a sale with the right of either returning the same property or to replace it, and in which case the mutuary not only obtains the title to the property but assumes all risk of its loss.  All the authorities referred to say that to constitute either of the characters of bailments the use must be gratuitous, as was the case here, and that in the absence of some express or implied limited period of the loan, it may be terminated at the pleasure of the lender.

In this case, as we have seen, the lending of the property by the Omar Oil and Gas Company was gratuitous, and, under the agreement, it was to be returned either *in specie* or in kind, *i. e.*, if the original articles borrowed should be worn out by the borrower in using them for the purposes contemplated, then the borrower would replace them with other property of a similar kind, which comes strictly within the definition of *mutuum*, as above defined; and in which case, as stated by Mr. Bouvier, and sanctioned by others, "the property passes to the borrower."  Such consequence is in full accord with settled rules and principals relating to the passing of a title to personal property, one essential element of which is that the one to whom the title is passed should in some manner accept the delivery of it before the title vests in him.  Under the proof in this case, the obligation of the borrowers, Clark and Coghill, to the Omar Oil and Gas Company was to return to it replaced property of a similar kind to that borrowed at the termination of the bailment, and there necessarily could be no passing of title of such replaced property until the lender in some manner accepted it; for, until that time the replaced property might not fulfill the obligation and its acceptance be rejected by the lender; or it might be consumed in its use and become necessary to substitute other property, which, if not done at the time the lender terminated the arrangements and demanded a return of the property, would impose an obligation on the borrower to pay to the lender the value of the borrowed property.  It is, therefore, quite clear that the Omar Oil and Gas Company never acquired title to any of the property involved in this action, since all of it was substituted property by the borrowers who wore out the original borrowed articles while using them in drilling operations.

The plaintiff, as we have seen, did not testify, but Clark stated in his evidence, in a very vague and unsatisfactory manner, that the Omar Oil and Gas Company, since the purchase of the leases by the defendant, had sold the personal property in contest to the plaintiff and that is all the evidence upon that subject. Clark as plaintiff's witness nor any other one for him testified what, if anything, he gave for the property, and the alleged purchase, if any, was shown to have been made after the property was transferred and delivered to the defendant and was at that time in its possession. We need not, however, rest this opinion on any of those facts, since it is patent that, even if there was a sale or attempted sale of the property to plaintiff by the Omar Oil and Gas Company, it transferred to him no title to it for the all sufficient reason that the seller itself had no title to it. That conclusion dispenses with the necessity of considering other questions raised and argued, including that of estoppel and ratification.

Wherefore, the motion for the appeal is sustained and the appeal granted, and the judgment is reversed with directions to dismiss the petition.