ALBERT MATUT, AS POSSESSOR OF CERTAIN CASH, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 32639–84.     Filed May 2, 1985.

Albert Matut, pro se.
*Michael B. Axman*, for the respondent.

OPINION

STERRETT, *Judge*: This case is before the Court on respondent's motion to dismiss for failure to state a claim upon which relief can be granted,[1] pursuant to Rule 40, Tax Court Rules of

---

[1]Respondent's motion was directed at petitioner, Albert Matut, both in his individual capacity and in his capacity as possessor of certain cash. On brief, however, respondent conceded that petitioner, in his capacity as possessor of certain cash, had stated a claim upon which relief can be granted.

Practice and Procedure,[2] and on Mario Lignarolo's motion to intervene as a party petitioner. A hearing was held with respect to said motions on December 11, 1984.

The issue to be decided, in determining whether respondent is entitled to prevail on his motion, is whether petitioner, in his individual capacity, has stated a claim upon which relief can be granted. The issue to be decided, in determining whether Mario Lignarolo's motion should be granted, is whether he has a right to intervene as a party petitioner.

Petitioner, Albert Matut, in his individual capacity, resided in Miami, Florida, at the time of filing the petition in this case, and he filed his Federal income tax return for the year ended December 31, 1983, with the Office of the Internal Revenue Service at Chamblee, Georgia.

Petitioner, Albert Matut, in his capacity as possessor of certain cash, is deemed a taxpayer by the statutory presumption set forth in section 6867.[3]

On April 21, 1983, Albert Matut was stopped by the local police authorities and questioned with respect to his possession of $175,000 in cash or its equivalent. Albert Matut denied ownership of the money and apparently told the authorities that the money belonged to Mario Lignarolo.[4] The police took possession of the money and notified Mario Lignarolo and the Internal Revenue Service of their action.

On April 28, 1983, respondent made a termination assessment against Albert Matut and seized cash in the amount of $87,500, which represented one-half of the money found in his possession. In making this assessment, respondent relied on the statutory presumption contained in the aforenoted section 6867.

Albert Matut received the notice of assessment and, on July 11, 1983, he and Mario Lignarolo filed a petition for review of the termination assessment, pursuant to section 7429, in the U.S. District Court for the Southern District of Florida. On October 3, 1983, the District Court dismissed the petition with a finding that the termination assessment was reasonable.

[2]All Rule references herein are to the Tax Court Rules of Practice and Procedure.

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable year in issue.

[4]At the hearing, it was claimed that the money belonged to a Panamanian corporation for which Mario Lignarolo was the resident agent.

Under authority of section 6851(b), a statutory notice of deficiency, dated June 14, 1984, was issued to Albert Matut, as possessor of certain cash, whereby respondent determined a deficiency in his Federal income tax for the year ended December 31, 1983, in the amount of $87,500. Albert Matut timely petitioned the Tax Court, both in his individual capacity and in his capacity as possessor of certain cash, for a redetermination of the deficiency.

*Respondent's Motion To Dismiss*
*for Failure To State a Claim*

In general, if the Secretary determines that there is a deficiency in tax due with respect to a taxpayer, he is authorized to send him a statutory notice of deficiency. The issuance of the notice entitles the taxpayer to file a petition with the Tax Court for a redetermination of the deficiency. If the taxpayer does petition the Tax Court, the Secretary is prohibited from making both an assessment of the deficiency in tax and a levy for its collection until the decision of the Tax Court becomes final. Thus, the taxpayer is given the opportunity to litigate the determined deficiency in tax without having first to pay the tax alleged to be due. See secs. 6211, 6212, and 6213.

Termination and jeopardy procedures under sections 6851[5]

---

[5]The relevant provisions of sec. 6851 are as follows:

SEC. 6851(a). AUTHORITY FOR MAKING.—

(1) IN GENERAL.—If the Secretary finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act * * * tending to prejudice or to render wholly or partially ineffectual proceedings to collect the income tax for the current or the immediately preceding taxable year unless such proceeding be brought without delay, the Secretary shall immediately make a determination of tax for the current taxable year or for the preceding taxable year, or both, as the case may be, and notwithstanding any other provision of law, such tax shall become immediately due and payable. The Secretary shall immediately assess the amount of the tax so determined * * * for the current taxable year or such preceding taxable year, or both, as the case may be, and shall cause notice of such determination and assessment to be given the taxpayer, together with a demand for immediate payment of such tax.

* * * * * * *

(b) NOTICE OF DEFICIENCY.—If an assessment of tax is made under the authority of subsection (a), the Secretary shall mail a notice under section 6212(a) for the taxpayer's full taxable year * * * with respect to which such assessment was made within 60 days after the later of (i) the due date of the taxpayer's return for such taxable year * * *, or (ii) the date such taxpayer files such return. * * *

and 6861[6] address special situations where the Secretary determines that a deficiency in tax is due from a particular taxpayer and that collection of such deficiency is in jeopardy. These provisions permit the Secretary to make an immediate assessment against the taxpayer for the alleged tax owing prior to a statutory notice of deficiency being issued. These sections are exceptions to the general procedures for assessment of determined deficiencies. After the assessment is made, a notice of deficiency must be issued to the taxpayer.

Congress believed that the termination and jeopardy procedures were not well suited to those cases where the Secretary believed that a tax was due with respect to an amount of an unidentified owner's property, such as cash. More specifically, Congress believed that it was unclear whether sections 6851 and 6861 were available because the Secretary could not determine a deficiency in tax or its amount for an identifiable person. H. Rept. 97–760, at 580, 582 (1982), 1982–2 C.B. 652–654.

To alleviate this uncertainty, section 6867 was enacted. The section provides—

SEC. 6867(a). GENERAL RULE.—If the individual who is in physical possession of cash in excess of $10,000 does not claim such cash—

    (1) as his, or

    (2) as belonging to another person whose identity the Secretary can readily ascertain and who acknowledges ownership of such cash, then, for purposes of sections 6851 and 6861, it shall be presumed that such cash represents gross income of a single individual for the taxable year in which the possession occurs, and that the collection of tax will be jeopardized by delay.

    (b) RULES FOR ASSESSING.—In the case of any assessment resulting from the application of subsection (a)—

    (1) the entire amount of the cash shall be treated as taxable income for the taxable year in which the possession occurs,

    (2) such income shall be treated as taxable at a 50-percent rate, and

---

[6]The relevant provisions of sec. 6861 are as follows:

SEC. 6861(a). AUTHORITY FOR MAKING.—If the Secretary believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency * * *, and notice and demand shall be made by the Secretary for the payment thereof.

(b) DEFICIENCY LETTERS.—If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 6212(a), then the Secretary shall mail a notice under such subsection within 60 days after the making of the assessment.

(3) except as provided in subsection (c), the possessor of the cash shall be treated (solely with respect to such cash) as the taxpayer for purposes of chapters 63 and 64 and section 7429(a)(1).

(c) EFFECT OF LATER SUBSTITUTION OF TRUE OWNER.—If, after an assessment resulting from the application of subsection (a), such assessment is abated and replaced by an assessment against the owner of the cash, such later assessment shall be treated for purposes of all laws relating to lien, levy and collection as relating back to the date of the original assessment.

Respondent argues that, under section 6867(b)(3), Albert Matut may maintain this action with respect to the cash on behalf of Albert Matut, as possessor of certain cash, but that he may not maintain this action in his own name since he denies ownership of the cash. Respondent buttresses his position by citing the portion of the Joint Committee on Taxation's explanation of section 6867, where they state:

Notice with respect to the assessment must be given to the person found in possession of the cash. *However, since that person denies ownership of the cash, he may not prosecute any action with respect to the cash.* [General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, H. Rept. 4961, 97th Cong.; Pub. L. 97–248, 227, 230 (1982), 96 Stat. 324. Emphasis added.]

While it is not entirely clear from our reading of the statute and its legislative history, Congress appears to have been concerned with the tax due on an unidentified owner's property interest in cash or its equivalent. To enable the Secretary to assess and collect such tax, Congress created a statutory presumption that the possessor of such cash would be deemed a taxpayer *solely* with respect to such cash and that the collection of the tax was in jeopardy. The intent behind this statute was to collect the tax owed on the unidentified owner's cash, and the person who was in possession of this money was the vehicle through which such tax would be collected. Congress never intended that the possessor of the cash be brought into this Court in his individual capacity. Since he claims that he does not own the cash, he would not have any personal interest in whether or not a deficiency were determined to exist with respect to such cash. The June 14, 1984, notice of deficiency involved in this case was issued to Albert Matut in his capacity as possessor of certain cash and not to him in his individual capacity. Accordingly, we shall treat respondent's motion to dismiss for failure to state a claim

as a motion to dismiss for lack of jurisdiction as to Albert Matut in his individual capacity, and that motion will be granted.

*Mario Lignarolo's Motion To Intervene*

Despite the fact that a notice of deficiency was not issued to Mario Lignarolo, he seeks to intervene as a party petitioner in this case. It has been clearly established that a third party, to whom a statutory notice has not been issued, may not become a party petitioner.[7] *Sampson v. Commissioner*, 81 T.C. 614, 616 (1983); *Estate of Siegel v. Commissioner*, 67 T.C. 1033, 1040 (1977); *Guarino v. Commissioner*, 67 T.C. 329, 331–332 (1976); *Cincinnati Transit, Inc. v. Commissioner*, 55 T.C. 879, 881–883 (1971), affd. 455 F.2d 220 (6th Cir. 1972). Accordingly, we deny Mario Lignarolo's motion to intervene as a party petitioner.

In his motion, Mario Lignarolo maintains that he owns the money[8] that was seized pursuant to the termination assessment against Albert Matut, and thus he has been deprived of his property. He insists that, since Albert Matut (in his capacity as possessor of certain cash) is a fictitious entity, he is entitled to step into his shoes. As authority for his position, he maintains that section 6867(c) provides for substitution of parties, and that such substitution should be allowed by way of intervention. Section 6867(c) is not applicable to the facts in the instant case. That section explains the effect of a later substitution of the true owner when the assessment against the possessor of cash is abated *and* replaced by an assessment against the owner of the cash. In the instant case, the assessment against Albert Matut, as possessor of certain cash, has not been abated and replaced by an assessment against the owner of the cash. Of course, Mario Lignarolo would be allowed to come forth and testify at Albert Matut's (in his

---

[7] We are aware of the fact that we have the discretionary authority, under appropriate circumstances, to allow intervention to those who have not been served with a notice of deficiency. In such a situation, the taxpayer would be allowed the status of intervenor, but not the status of party petitioner. *Sampson v. Commissioner*, 81 T.C. 614, 616 (1983). Since this case is before us for the sole purpose of making a redetermination with respect to the tax liability of Albert Matut, as possessor of certain cash, we do not deem this to be an appropriate circumstance in which to utilize our discretionary authority.

[8] At the hearing, however, it was claimed, as noted, that the money belonged to a Panamanian corporation for which Mario Lignarolo was the resident agent.

capacity as possessor of certain cash) trial that he is the owner of the money in issue.

To reflect the foregoing,

*An appropriate order will be entered.*