## ALBERT MATUT AS POSSESSOR OF CERTAIN CASH, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 32639-84.          Filed May 11, 1987.

*Michael J. Osman*, for the petitioner.
*Michael B. Axman*, for the respondent.

WHITAKER, *Judge*: The pending matter is the third but probably not the final episode in the continuing saga which commenced in April 1983, when respondent seized from Albert Matut cash in the amount of $87,500, representing one-half of the face amount of cashier's checks, money orders, and cash found in his possession and seized by law enforcement officers. Proceeding under section 6867[1] respondent made a termination assessment against Albert Matut as the Possessor of Certain Cash and on June 14, 1984, issued a notice of deficiency. The petition followed.

In our opinion reported at 84 T.C. 803 (1985), we held that the petition of Albert Matut in his individual capacity

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue. In so far as pertinent, sec. 6867 reads as follows:

SEC. 6867. PRESUMPTIONS WHERE OWNER OF LARGE AMOUNT OF CASH IS NOT IDENTIFIED.

(a) GENERAL RULE.—If the individual who is in physical possession of cash in excess of $10,000 does not claim such cash—

(1) as his, or

(2) as belonging to another person whose identity the Secretary can readily ascertain and who acknowledges ownership of such cash,

then, for purposes of sections 6851 and 6861, it shall be presumed that such cash represents gross income of a single individual for the taxable year in which the possession occurs, and that the collection of tax will be jeopardized by delay.

(b) RULES FOR ASSESSING.—In the case of any assessment resulting from the application of subsection (a)—

(1) the entire amount of the cash shall be treated as taxable income for the taxable year in which the possession occurs,

(2) such income shall be treated as taxable at a 50-percent rate, and

(3) except as provided in subsection (c), the possessor of the cash shall be treated (solely with respect to such cash) as the taxpayer for purposes of chapters 63 and 64 and section 7429(a)(1).

(c) EFFECT OF LATER SUBSTITUTION OF TRUE OWNER.—If, after an assessment resulting from the application of subsection (a), such assessment is abated and replaced by an assessment against the owner of the cash, such later assessment shall be treated for purposes of all laws relating to lien, levy and collection as relating back to the date of the original assessment.

should be dismissed, that Mario Lignarolo (Lignarolo) had no standing to intervene in the proceeding as a party petitioner, but that Lignarolo should be allowed to present evidence showing that he is the owner of the money in issue. In our second opinion—86 T.C. 686 (1986)—we concluded that we had jurisdiction to hear and determine the issue of ownership of the cash—interpreting section 6867 to authorize us to issue, in effect, a declaration of ownership rights to the cash. Accordingly, we then set the case for hearing to permit the claimant—Lignarolo—to offer evidence pertaining to his ownership rights. That is the particular issue now before us. For the reasons herein set forth, we find that as between respondent and Lignarolo on the date of the seizure in April 1983, Lignarolo was entitled to custody and possession of the cash and in that respect he had ownership rights therein and that he is now the true owner thereof.

## FINDINGS OF FACT

Some of the facts have been stipulated and they are so found. At the time of the filing of the petition, both Matut and Lignarolo resided in Miami, Florida. On April 21, 1983, the day of the seizure of the money, Matut claimed, and still contends, that the cash belonged to Lignarolo. In the proceeding before the United States District Court for the Southern District of Florida in 1983, in which the District Court on September 21, 1983, upheld the termination assessment as reasonable, Lignarolo contended that at the time of the seizure he had custody of the funds which belonged to a Panamanian corporation named COINPA, S.A., and that at the time of the hearing he was the legal owner of the funds, having reimbursed COINPA for the $175,000 seized from Matut.

In December 1982, or January 1983, in order to carry out contractual arrangements with another Panamanian corporation, INAVI, S.A., COINPA employed Lignarolo as its agent to receive funds in Miami from various individuals, either in cash or checks, to issue a receipt to each individual depositing funds with him and to deposit such funds in accounts in one or more banks in the Miami area as

designed by COINPA.[2] Most of the deposits were made to accounts owned or controlled by INAVI. Lignarolo advised COINPA that he would not handle any money from an illegal source, and that he would be forced to file currency reports if the amount involved in any transaction required reporting.[3] When cash was deposited with him, Lignarolo made no effort to identify the individual involved. Each individual was required to give a name which may or may not have been that individual's real name. The name given was placed on the receipt. The original of each receipt was given to the individual and Lignarolo retained a carbon copy. On a typical day, Lignarolo's receipts might aggregate $20,000.

Initially, funds were deposited in designated accounts promptly, but after a period of time, the Miami banks declined to receive large sums of cash. Lignarolo then developed a system pursuant to which he accumulated the cash at his office and employed various individuals to exchange accumulated cash in relatively small amounts for cashier's checks or money orders. The deposit of cashier's checks and money orders in amounts less than $10,000, each, apparently posed no significant problem. These cashier's checks or money orders were then deposited by Lignarolo or at his direction, from time to time, pursuant to COINPA's directions. Matut was one of the individuals so employed to convert cash into cashier's checks and money orders.

On the day of the seizure, Lignarolo's office had given Matut $175,000 in cash to exchange. That money had been accumulated from funds delivered to Lignarolo prior thereto. Matut was stopped by an officer employed by the Palm Beach County, Florida, sheriff's department. At that time, he had in his possession $153,500 in $10 and $20 bills, and cashier's checks and money orders aggregating $21,500.

---

[2]The State of Florida, Department of State, has no record that COINPA, or the other foreign corporation involved in this matter INAVI, S.A., had ever qualified to do business as foreign corporations. Respondent presented proof that there was no record of tax returns or information returns being filed with respondent's service center in Atlanta, Georgia, by either of said foreign corporations. We note that the Atlanta Service Center might not have been the proper location for filing any such returns. Sec. 1.6091-3(f), Income Tax Regs.

[3]Lignarolo had been found guilty, in a jury trial, of conspiracy to travel and use facilities in interstate commerce with intent to distribute the proceeds of an unlawful activity, in violation of 18 U.S.C. sec. 371 (1982), and of traveling in interstate commerce with an intent to distribute the proceeds of an unlawful activity in violation of 18 U.S.C. sec. 1952(a)(1) and (2), as charged in two counts of an indictment.

The sheriff's department initially took possession of the cash, money orders, and checks. One-half of the money (the sum of $87,500) was turned over to respondent, and most of the balance was ultimately returned by the county sheriff's department to Lignarolo following litigation. The business arrangement between COINPA and Lignarolo was terminated shortly after the seizure.

Shortly after the seizure in 1983, Lignarolo paid COINPA, in cash, the sum of $112,484, and he arranged for one of his (Lignarolo's) business associates in Colombia to pay an additional $62,516 on Lignarolo's behalf. Lignarolo believed that he was obligated to reimburse COINPA for the $175,000 which had been seized, although the written document given by COINPA to Lignarolo did not so provide.

## OPINION

Petitioner and Lignarolo contend that under the arrangement with COINPA, Lignarolo became the legal owner of the funds deposited with him even though he was required to account to COINPA for those funds and to deposit them in designated bank accounts of other persons. Petitioner and Lignarolo characterize the relationship between COINPA and Lignarolo as a "mutuum," with a special characteristic that the person holding the funds has the privilege of converting the funds to his own use until required to restore them to the owner. That relationship is treated as analogous to a deposit of money in a bank, creating a creditor-debtor relationship with title actually passing from the creditor to the debtor. See *New Domain Oil & Gas Co. v. Hayes*, 202 Ky. 377, 259 S.W. 715 (1924), 38 A.L.R. 172, and Annotation, Character of Contract for Use of Chattels With Agreement for Replacement, 38 A.L.R. 175, 177 (1924).

Respondent argues that the relationship between COINPA and Lignarolo was either that of principal and agent, or bailor and bailee, and that in either case, Lignarolo was not the owner of the cash at the time of the seizure. Respondent further contends that it is the ownership on that date that is material. The fact that Lignarolo may have become legal owner of the funds in respondent's possession later on, by reason of having reimbursed COINPA therefor is, according to respondent, immaterial.

Characterization of Lignarolo's relationship with COINPA should be determined in this case under Florida law, but the parties have not called to our attention any case or statute in Florida which is even closely in point. Neither has petitioner nor Lignarolo cited any Florida case indicating that the State of Florida recognizes the concept of mutuum, which was derived from Roman or continental law. We conclude, in any event, that the relationship between COINPA and Lignarolo was not that of bailment. Implicit in a bailment is the obligation to return the identical property. In this case, Lignarolo was required to deposit funds in designated bank accounts where the funds would clearly lose their identity. Moreover, he was authorized by COINPA to change the cash delivered to him into cashier's checks or money orders. Whether he was entitled to use the funds for his own account pending deposit is not clear. We conclude that the COINPA-Lignarolo relationship was more akin to an agency than to a mutuum.

In this case Lignarolo, as an agent, had fiduciary responsibilities to COINPA to collect the money, hold it, and deposit it to the proper accounts. See 1 Restatement, Agency 2d, sec. 13 (1958). Whether or not he had, or acquired, legal title to the money while it was in his possession, his agreement obligated him to hold it for the benefit of, and subject to the instructions of, i.e., control of, COINPA.

Whether a person is a trustee, an agent or an agent-trustee, depends upon the manifestation of intention of the parties. Frequently the intention of the parties is clear, but it is not always so. Which, if either, of the relations is created depends upon the construction of the words used in the light of all the circumstances. If a person receives property from another who manifests an intention that the transferee is to hold the property for the benefit of and subject to the control of the transferor, an agency is created, whether or not title is transferred. If the title is transferred, the transferee is an agent-trustee. * * * [1 Restatement, Agency 2d, sec. 14B at 63 (1958).]

When a third person interferes with the possession of an agent, the agent may bring suit therefor in his own name. 1 Restatement, Agency 2d, *supra*, sec. 367. Florida subscribes to this theory of agency. See *Rauch, Weaver, Millsaps, Biglow & Co. v. Central Bank & Trust Co.*, 453 So. 2d 459

(Fla. App. 1984); *Schurkman v. Stolar*, 347 So. 2d 653 (Fla. App. 1977).

In *Rauch*, the beneficiaries of an estate transferred title to a promissory note secured by a mortgage to Rauch with express power to institute legal action, if necessary, to collect the note and collateral. The court held that:

> However, by naming Rauch as their agent with power to litigate, the beneficiaries created an identity of interest with Rauch. Rauch, therefore, is not an uninvolved bystander. To the contrary, Rauch has a real stake in the outcome of this appeal so as to assure concrete adverseness which is necessary to sharpen the presentation of the issues. Accordingly we conclude that Rauch has standing to pursue this appeal. [453 So. 2d at 460; citation omitted.]

In *Schurkman*, the Florida court held that an agent who loaned money of his principals on security of real property could sue the attorneys who issued a title opinion where they failed to note an outstanding encumbrance. We conclude that under Florida law, Lignarolo had both the authority and the obligation to reclaim the seized money against the entire world, other than COINPA. For purposes of section 6867 as of the date of the seizure, Lignarolo was the resident agent of COINPA and must be treated as the owner of the funds vis-a-vis respondent. The Palm Beach County sheriff's department recognized Lignarolo's claim, and respondent should have done the same thing.

We are not unmindful that the caption of section 6867(c) uses the words "True Owner" and the Conference report also recites that "the true owner can come forward and challenge the assessment." (H. Rept. 97-760 (Conf.) (1982), 1982-2 C.B. 654.)[4] But it is unnecessary in this case to

---

[4]The report, in so far as pertinent, reads as follows:

"The bill provides that the Secretary can presume that the collection of an amount of income tax is in jeopardy, where an individual in physical possession of more than $10,000 of cash or its equivalent denies ownership of the cash and does not claim that such cash belongs to another person the identity of whom is readily ascertainable by the Secretary (and who acknowledges ownership). In such a case, the Secretary may presume, for purposes of the jeopardy or termination assessment provisions (1) that such cash represents gross income to a single individual for the taxable year of possession taxable at 50-percent rate, and (2) that the collection of the tax on such cash would be jeopardized by delay. The Internal Revenue Service cannot assess on the same cash twice.

"Notice with respect to the assessment is given to, and the right to contest the assessment is vested in, the person found in possession of the cash. However, the true owner can come forward and challenge the assessment and will be retroactively substituted for the possessor for all purposes (including establishing lien priorities) as of the date of the original assessment.

require COINPA, through an officer or employee, to come forward to claim the cash. This is particularly true now that Lignarolo has in fact reimbursed COINPA for the money, and has by operation of law succeeded to whatever rights COINPA had under section 6867.

Respondent argues that Lignarolo is not a credible witness, that there is no evidence in the record to support his contention that COINPA actually exists, or that it is or was, on the date of seizure, the true owner of the cash. Respondent appears to believe that it is incumbent upon petitioner or Lignarolo to produce documentary evidence of the existence of COINPA, or to bring before the Court an officer or employee of COINPA authorized to represent it. Respondent also argues that the numerous individuals who delivered the cash to Lignarolo are not identified or otherwise brought before the Court. Thus, respondent contends that COINPA is no more than "a paper entity, created as a subterfuge or alter ego, to thwart any attempt by the government to recognize ongoing criminal activity and place Mario Lignarolo, a convicted money launderer, back into the money laundering business." We heard Lignarolo's testimony, observed his demeanor on the witness stand, and we have examined his testimony closely for any conflict. We believe the witness was testifying truthfully and have based much of our findings of fact thereon.

Respondent, on brief, repeatedly reminds us that Lignarolo was convicted of money laundering. It is significant, however, that even though Lignarolo was still on probation, respondent has not submitted evidence of any governmental effort to revoke his probation or to charge him with any illegal activity in connection with the receipt of funds and the deposit of those funds pursuant to his arrangement with COINPA.[5] Of course we cannot fail to realize that there is a high probability that the funds deposited with Lignarolo were derived from illegal activity. We take note of the fact that illegal, drug-related activities are prevalent in the Miami area, and we have no knowledge of any legal activity which is apt to generate the volume of

---

In addition, the true owner will continue to have the same rights as exist under present law to recover his cash."

[H. Rept. 97-760 (Conf.) (1982), 1982-2 C.B. 654.]

[5]See, e.g., *United States v. Varbel*, 780 F.2d 758 (9th Cir. 1986).

cash here involved. But such suppositions are entirely irrelevant to the decision of the issues before us. Mere suspicion cannot offset thoroughly credible testimony.

Respondent has apparently made no attempt to ascertain if, in fact, there are Panamanian corporations named COINPA and INAVI, or to ascertain if such corporations are participants directly or otherwise in some illegal activity in the United States. Respondent's efforts throughout this case have been tantamount to treating section 6867 as equivalent to a forfeiture statute, which it is not. Respondent contends that "unless this Court has before it enough facts to make a determination that the cash found in Albert Matut's possession represents taxed, untaxed, or partially taxed income of the unidentified owner, the assessment pursuant to I.R.C. Section 6867 must stand." How we or respondent can determine the tax status of cash belonging to an unidentified owner, we are at a loss to determine. As we explained in our prior opinion,

> Upon establishment of the identity of the true owner by us, respondent may, if so advised, abate the assessment previously made pursuant to section 6867(a) and (b) and replace it with an assessment against the person, firm, or corporation determined by us to be the true owner, as contemplated by subsection (c). In that circumstance, the proceedings would continue as though in the first instance the statutory notice had been issued to the true owner. But respondent cannot defeat the statutory remedy of the true owner by declining to replace the erroneous assessment and declining to issue a new statutory notice relating back to the date of the statutory notice issued pursuant to the presumption of section 6865(a) [6867(a)]. * * * [86 T.C. at 691.]

Respondent's attitude in this case may arise out of concern that these funds actually did belong to COINPA, that they are the result of illegal income-producing activity carried out in the United States, but that respondent lacks the information, and the resources to obtain it, upon which to predicate a tax deficiency. Perhaps respondent is merely seeking to force COINPA to submit itself to the jurisdiction of a United States Court. The remedy, if there is one, is not to attempt to forfeit this money to the United States under section 6867 by continuing to argue that we lack jurisdiction to determine ownership of the cash, and that in any event, we cannot determine ownership until we have ascer-

tained its tax status. Respondent persists in misunderstanding the statute.[6]

Under section 6867, once the true owner is identified, respondent must be given the opportunity to investigate and to determine a deficiency against the true owner by issuance of a substitute statutory notice. At that point, this Court can make a determination as to the correct tax liability of the true owner.

We conclude, accordingly, that as of the date of the seizure, COINPA was the owner of the funds, and as of the date of trial, Lignarolo had succeeded to full legal and equitable ownership under State law. Matut has never claimed any interest in the funds. Prior to the date on which the statutory notice was issued in this case, respondent knew these facts. Thus, one of the conditions upon which respondent is authorized to proceed under section 6867 was not met. Respondent knew that COINPA was the owner of the cash on the date of seizure, and that Lignarolo was the owner at the time of the District Court hearing, and there was in that hearing a sufficient acknowledgment of those facts by or on behalf of both persons. Therefore, the statutory notice issued to Matut as possessor is invalid, and this proceeding must be dismissed for lack of jurisdiction.

*An appropriate order will be entered.*

---

[6]Respondent apparently grounds his position that we have no jurisdiction upon an explanation of the revenue provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) prepared by the staff of the Joint Committee on Taxation and transmitted to the Chairman and Vice-Chairman of the Joint Committee by letter from the Chief of Staff dated Dec. 31, 1982. The explanation of Act sec. 330 which added sec. 6867 to the Code contains the following sentences:

"Notice with respect to the assessment must be given to the person found in possession of the cash. *However, since that person denies ownership of the cash, he may not prosecute any action with respect to the cash.* However, the true owner of the cash can come forward and challenge the assessment and will be substituted retroactively for the possessor for all purposes (including establishing lien priorities) as of the date of the original assessment. * * * [Emphasis supplied.]"

The corresponding paragraph in the Summary of TEFRA by the staff of the Joint Committee released Aug. 24, 1982, is essentially identical to the verbiage in the Dec. 31, 1982, Explanation from which the above sentences are quoted except that the underlined sentence does not appear. We further note that this sentence is directly contrary to the Conference report, which says "Notice with respect to the assessment is given to, and the right to contest the assessment is vested in, the person found in possession of the cash." See note 4 *supra*. While staff explanations of tax statutes are often considered by us, the staff simply cannot contradict the report of the Conference Committee. Thus, this sentence in the Dec. 31, 1982, Explanation should be ignored. But see *Robrish v. United States*, 579 F. Supp. 477 (D. Mass. 1983).

Reviewed by the Court.

SIMPSON, NIMS, SHIELDS, COHEN, CLAPP, SWIFT, WRIGHT, PARR, and WELLS, *JJ.*, agree with the majority opinion.

---

KÖRNER, *J.*, dissenting: While I agree for the most part with what the Court says in its majority opinion here, I do not agree with its final disposition of this matter, and accordingly, I must dissent. Likewise, I am unable to agree with Judge Williams' proposed disposition.

I agree with Judge Williams' dissent that the time to test the propriety of respondent's using the procedure provided by section 6867 should be the time of the seizure. At that time, I think this record is clear that respondent knew that Matut did not claim the ownership of the cash, but it was equally *unclear* to respondent who the true owner was.[1] Thus, the requirements of section 6867(a) were satisfied, and respondent was justified in doing what he did in the first instance.

Thereafter, respondent properly sent a notice of deficiency to "Albert Matut as the Possessor of Certain Cash." Sec. 6861(b). As we decided in our first opinion herein, reported at 84 T.C. 803 (1985) (hereinafter Matut I), respondent's action under section 6867 created a new and fictitious taxpayer, Albert Matut as Possessor of Cash, as distinct from Albert Matut, personally.[2] It was this new and fictitious taxpayer to whom the notice of deficiency was sent and who had the right to petition this Court for a redetermination of that deficiency, and he did so. In our second opinion, reported at 86 T.C. 686 (1986) (hereinafter Matut II), we went on to hold that with the case in this posture, even though Lignarolo as claimant could not be allowed to intervene in the proceeding as a party-petitioner, he should be allowed to intervene to assert his rights to the cash (see and compare *Sampson v. Commissioner*, 81 T.C.

---

[1] As the majority opinion points out, the Palm Beach County, Florida, sheriff's department returned the excess money to Lignarolo only later, and after litigation, and the majority has now determined that COINPA was the true owner, with Lignarolo as its authorized agent. But this clarification only came after the time of seizure.

[2] Such juridical or fictitious persons are not unknown to the law in general, nor to the tax law in particular, e.g., corporations, trusts, estates. See secs. 6601, 7701(a)(1).

614 (1983)), and that we had the jurisdiction to determine the true owner. In the trial resulting from Matut II, Lignarolo·came forward and proved to the Court's satisfaction that COINPA was the true owner of the funds at the time of seizure and that Lignarolo was its authorized agent. As the result of the majority's determination of these matters herein (Matut III), it is now known that COINPA was the true owner of the money, and that the present petitioner was not.

What, then, should the Court do at this point? In my opinion, the path is clear. Where such a determination has been made—and the majority has made it—the only thing this Court should do is to enter a decision of overpayment in the amount of $87,500 in favor of the petitioner who is before us, and against whom such an assessment has been made. Respondent then has the right, under section 6867(c), to issue a statutory notice of deficiency against the true owner, in conjunction with applying the provisions of sections 6851 and 6861, with the effective date of such action dating back to the original action against this petitioner. See H. Rept. 97-760 (Conf.) (1982), 1982-2 C.B. 654, quoted in footnote 4 of the majority opinion.

The rights of both respondent and the true owner of the cash are thus preserved. Under section 6867(c), respondent, now knowing the true owner of the cash, is in a position to make a determination of deficiency against COINPA, if respondent deems it advisable, not only as to the particular cash here in question, but as to all of COINPA's taxable income for the given year. See Matut II, 86 T.C. at 691. COINPA, on the other hand, being in receipt of a statutory notice of deficiency, has the right to come to this Court and have its entire tax liability for the year determined. Sec. 6213.

Both a valid statutory notice and a timely petition are jurisdictional in this Court (*Shelton v. Commissioner*, 63 T.C. 193 (1974)), and there is no authority for this Court to substitute COINPA as the party petitioner in the case before us. The only petitioner we have before us in this case is the fictitious taxpayer "Albert Matut as Possessor of Certain Cash." He is the one from whom the money was taken, and it is he against whom the tax was assessed. Accordingly, it

is he in whose favor a decision of overpayment should be entered in this case. What respondent does, or does not do, hereafter under section 6867(c) with respect to COINPA, or any person whom respondent deems to be the true owner of the cash, is not our concern, and we have no right to dictate respondent's actions in this regard. Having determined that an erroneous assessment was made against the wrong taxpayer, however, which we have done here, it necessarily follows that we should enter a decision of overpayment in his favor. Having done that, our duty is discharged and we have no further interest in the matter until the time that a proper petition is filed with us on behalf of some other taxpayer—perhaps COINPA—to whom respondent has issued a valid notice of deficiency under section 6867(c). I think that this is what the statute intended. To say that the petition herein must be dismissed for lack of jurisdiction, as the majority does, simply makes a nullity of this whole proceeding. If we must dismiss for lack of jurisdiction, then the deficiency determined against this petitioner must stand, although we have determined that he is not the proper taxpayer. Furthermore, since respondent now has, and will presumably keep, the money, respondent has no interest in pursuing the taxpayer whom we have determined to be the true owner, and will just let matters stand. The true owner is thus effectively prevented from coming to this Court and getting a redetermination of his tax liability. I do not think that Congress intended such a result in enacting section 6867.

Accordingly, I respectfully dissent.

STERRETT, JACOBS, and GERBER, JJ., agree with this dissent.

---

WILLIAMS, J., dissenting: I believe the majority has misconstrued section 6867. The section is *not* an operative provision; it simply provides presumptions to be used under limited circumstances in applying the operative sections, viz, section 6851 (termination assessment) or section 6861 (jeopardy assessment). In this case, section 6851 is the operative statutory section.

In this case the limited circumstances under which respondent can invoke the presumptions of section 6867 were present: the true owner of the cash was (1) unknown and (2) not readily ascertainable at the time of the assessment or, if ascertainable, did not acknowledge ownership of the cash. Consequently, respondent properly proceeded to terminate the tax year and assess under section 6851. It is irrelevant that at some later date respondent knew or could have known who the true owner was. The assessment must stand or fall on the circumstances existing when it is made. The majority, however, would invalidate the statutory notice of deficiency and dismiss this case for lack of jurisdiction because the statutory notice of deficiency was issued after the District Court hearing at which "a sufficient acknowledgement" of ownership was made. This conclusion is erroneous for several reasons:

(1) The majority acknowledges that COINPA has never come forward in these proceedings. Certainly, Lignarolo has not proceeded either here or in the District Court as COINPA's "agent-trustee." Consequently, I am baffled by the majority's willingness to pin respondent to the conclusion that any acknowledgement of ownership has been made by COINPA.

(2) Even if, through Lignarolo, somehow a "sufficient acknowledgement of ownership" has been made, it was *not* made at the time of the section 6851 assessment. The time for testing whether the true owner is readily ascertainable and acknowledges ownership is fixed by statute at the time of the assessment.[1] Section 6867 is not a set of continuing conditions which respondent must eternally satisfy (or satisfy even on the day after assessment).

(3) I believe in this case, as in all other cases involving deficiency determinations after termination assessments, the tax liability of the true owner of the cash is at issue. It was the true owner whose tax year was terminated pursuant to section 6851(a). COINPA, as the majority finds, was the true owner of the cash at the time of assessment. It is, therefore,

---

[1]Because sec. 6867 is a set of presumptions that do not operate independently of sec. 6851, the conditions for applying the presumptions must exist at the time of the termination. The act of termination and assessment under sec. 6851 occurs on a particular date. That date is fixed; it does not move; the assessment stands or falls based on the circumstances existing on that date not some other.

COINPA's tax year that was terminated, and it is COINPA's tax liability that is placed in issue by the assessment. Since it is COINPA's tax liability that is at issue, the antiassignment statute forbids the sale of its tax claim to Lignarolo. 31 U.S.C. sec. 3727(b) (1982). Consequently, Lignarolo must never be regarded by this Court, or any other Federal court, as having any right to the cash.

In section 6867, Congress authorized respondent to assess under section 6851 because it believed that the true owner of the cash likely owed Federal income tax. Consequently, section 6867 *in effect* authorizes an *in rem* proceeding against the only real party in interest, i.e., the true owner of the cash. This is the position of the United States before the District Courts (see *Robrish v. United States*, 579 F. Supp. 477 (D. Mass. 1983), viz, the true owner of cash is the only one who has standing to challenge the reasonableness of the termination assessment. As argued by the United States in *Robrish* and accepted by the *Robrish* court, the assessment is really *an assessment against the true owner.*[2] The presence of the possessor is a matter of satisfying due process notice requirements that otherwise would prevent the Government from seizing the cash. The possessor is the only one, despite his contrary protests, who may be able to locate (or be located by) the true owner. The true owner, after he misses his funds, is likely to inquire into what happened to them, and Congress reasonably believed that the likely target of this inquiry would be the possessor. Thus, seizure and assessment in the name of the possessor, qua possessor, is not the creation of a new category of taxpayer. Rather, section 6867 creates a new *in rem* notice procedure that is, in reality, a procedure against the true owner and involves only that owner's tax liability. Therefore, when the statutory notice of deficiency is issued to the possessor pursuant to section 6851(b) to perfect the assessment, it is, in effect, a notice of deficiency to the true owner. By invalidating the statutory notice in this case as the majority does, the termination assessment may be no longer valid because the Government may thereby be

---

[2] Only the true owner can challenge the reasonableness of the assessment pursuant to sec. 7429(b) because the possessor is treated as "the taxpayer" only for receiving the notice required by sec. 7429(a)(1). See sec. 6867(b)(3).

deemed to have failed the requirements of section 6851(b). *Laing v. United States*, 423 U.S. 161 (1976).

In my view, respondent may not issue a statutory notice to anyone other than the possessor. The possessor is the focal point of satisfying due process requirements, and once having made the assessment, respondent is required to issue the statutory notice. Issuance of the notice to the possessor is the equivalent of issuing a notice to the true owner of the cash.

Section 6867(c), consistent with this interpretation, provides that respondent *may* change his bookkeeping entry against the possessor and substitute the true owner. This change has retroactive effect to acknowledge formally what has always been the substance of the proceeding. There is nothing in the statute, however, compelling the Government to change its assessment; yet this is the effect of the majority's opinion. In this case the true owner, as found by the majority, is COINPA. COINPA has yet to appear and assert its right to the cash, despite the lengthy proceedings in this Court. Perhaps COINPA does not desire to have its tax liability determined. Perhaps COINPA is not the true owner. Whatever the reason, the Government's assessment remains effective until after the Court (1) specifically decides who the true owner is, (2) permits the true owner to be substituted for the possessor as the real party petitioner, and (3) gives the Government a reasonable time to change the assessment on its books. If, upon a judicial determination of ownership, the Government changes its bookkeeping entry of assessment to substitute the true owner pursuant to section 6867(c), the substitution would relate back to the date of the assessment against the possessor, and we would proceed to the merits of the true owner's tax liability. If the Government were to choose not to substitute, we should enter a decision of overpayment in favor of the true owner.

While the decision as to who is the true owner is a judicial one,[3] the decision to assess belongs to the Govern-

---

[3] I do not disagree with the majority that we had jurisdiction in this case to determine ownership. Moreover, the possessor of cash, qua possessor, certainly has a right to challenge respondent's compliance with the statutory procedures of sec. 6867. Because respondent issued the statutory notice as required by sec. 6851(b), venue properly lies here for that challenge. There were, however, no procedural improprieties, and the possessor has no standing to put at issue the substantive merits of the tax at issue. Only the true owner of the cash can put the merits at issue. Sec. 6867(b)(3).

ment. In this case, it is clear that Lignarolo is *not* the true owner and his tax liability is not at issue. Given that the true owner has had sufficient time to ratify the petition in this case, I would dismiss the case without invalidating the notice of deficiency.

PARKER and HAMBLEN, *JJ.*, agree with this dissent.