PEOPLES LOAN & TRUST CO., AS POSSESSOR OF CERTAIN CASH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

LEON E. HENDRICKSON, AS POSSESSOR OF CERTAIN CASH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 30402-84, 30420-84.     Filed October 26, 1987.

---

*Robert E. Johnson, Marc A. Hetzner,* and *Linda S. Nichols,* for the petitioners.[1]

*Rodney J. Bartlett,* for the respondent.

KÖRNER, *Judge:* In these consolidated cases, the Commissioner determined that petitioner Peoples Loan & Trust Co., as possessor of certain cash, had a deficiency in Federal income tax of $113,250 for 1983, and that petitioner Leon E. Hendrickson, as possessor of certain cash, had a deficiency in Federal income tax of $1,834,500.25 for 1983. The issue for our decision is whether petitioners are liable for such deficiencies under section 6867 of the Internal Revenue Code of 1954,[2] relating to jeopardy assessments against possessors of substantial cash when the owner is unknown.

### FINDINGS OF FACT

Some of the facts were stipulated, and those facts are so found.

At the time the petitions were filed in this case, petitioner Peoples Loan & Trust Co. (Peoples Loan) was a corporation whose principal place of business was in Winchester, Indiana, and petitioner Leon E. Hendrickson resided in Winchester, Indiana.

Peoples Loan is a financial institution regulated by the State of Indiana and the Federal Deposit Insurance Corporation. It has been in operation since 1901.

---

[1]George F. Daly and William G. Daly signed the petitions and briefs in this case, but they are not listed as counsel because they are not admitted to practice before this Court.

[2]All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

During 1983, Mr. Hendrickson was a trader of gold and silver coins and bullion. He operated such business as a sole proprietorship under the name "Silver Towne." He became involved in the coin business part time in 1949. The coin business grew, and in 1967, he began working in such business full time. He operated the coin business from the basement of his home until 1982, when he moved into a new building next to his home. The new building was extremely secure and contained two vaults, which were equipped with heat- and motion-sensitive alarm systems.

Silver Towne had a numismatic coin department, which dealt in coins of interest to collectors, and a bullion department, which traded items having value because of their precious metal content. The bullion department bought and sold silver bars, gold coins, and bags of silver and clad coins. In the coin business, a silver coin is considered to be a dime, quarter, or half-dollar minted by the United States before 1965 and having a silver content of 90 percent. A clad coin is a half-dollar minted between 1965 and 1970, with a 40-percent silver content. Each bag of coins sold by Silver Towne contained coins with a total face value of $1,000.

In March 1980, Larry Dale Martin took over the management of an organization known as the National Commodity Exchange (NCE). NCE was a membership organization designed to serve as a "warehouse bank" for its members. Members deposited funds with NCE and received receipts for such deposits. NCE purchased gold and silver and other precious metals with the funds obtained from its members. NCE maintained an account for each member, which contained the amount of such gold and silver with a value at the time of purchase equal to the member's deposits. All the reserves of NCE were invested in precious metals.

NCE also offered a bill-paying service to its members. Under such service, members directed NCE to sell gold and silver held in their accounts in exchange for Federal Reserve notes and to use such notes to pay the bills of the members.

NCE described its primary purpose to be "protection. Protecting your wealth from the ravages of inflation and Federal Reserve System bank failures and protecting your privacy in your financial dealings." It claimed that its

bill-paying service allowed members to "pay * * * creditors without generating a paper trail in the Federal Reserve System which is traceable back to you."

In early 1983, Mr. Martin received a subpoena directing him to furnish certain records of NCE to a Federal District Court investigating the financial affairs of such organization. He refused to do so, contending that such records were personal and covered by his claim of a Fourth and Fifth Amendment privilege. The court held that the records were not personal but rather belonged to NCE and therefore were not protected by such privileges. When Mr. Martin continued to refuse to furnish such records, the court found him to be in contempt of court. He served 52 days in jail as a result.

In an effort to better preserve the privacy of the records, Mr. Martin founded the National Commodities Exchange Association (NCEA) in April 1983 as a sole proprietorship. NCEA had the same purpose and offered the same services as did NCE. NCEA members entered into agreements with Mr. Martin, naming him as their agent for the purpose of buying and selling gold and silver. Such agreements, according to their terms, provided Mr. Martin with no ownership interest in the gold and silver, but only possession of funds entrusted to him by NCEA members. For its services, NCEA charged an annual membership fee and a transaction fee of $1 for each check written, deposit accepted, or amount paid out on behalf of its members.

In 1981, Mr. Martin met Mr. Hendrickson and began doing business with him, first through NCE and later through NCEA. In such dealings, Mr. Martin bought from and sold to Mr. Hendrickson silver and gold bullion, South African Krugerrands, bags of silver and clad coins, and other precious metals. Commodities sold to Mr. Martin were handled in three different ways. Sometimes, items sold to Mr. Martin were held at Silver Towne in his name and subject to his later instructions as to their disposition. Other such items were shipped directly to Mr. Martin. Finally, some items sold to Mr. Martin were shipped to other persons designated by Mr. Martin. The last of these practices is known as "drop-shipping" and is a regular practice in the coin-trading business. Throughout Silver

Towne's dealings with Mr. Martin, it maintained separate ledger books to record the activity in his account.

On August 16, 1983, Mr. Martin executed a promissory note to Peoples Loan and obtained a loan of $150,000. To secure such loan, he gave Peoples Loan a security interest in 25 bags of silver coins.

On October 12, 1983, Mr. Martin died. He was a resident of Englewood, Colorado, when he died. At the time of his death, Peoples Loan held on behalf of Mr. Martin 25 bags of silver coins and $59,843.12 in cash, and Mr. Hendrickson held on behalf of Mr. Martin 435.48 bags of silver coins, 29.87 bags of clad coins, 54 Krugerrands, and $68,000.50 in cash.

On October 24, 1983, Peoples Loan filed papers in Randolph Circuit Court in Indiana requesting that it be appointed administrator of the estate of Mr. Martin. On October 27, 1983, a complaint was filed by Donna Mehring and Michael R. Storeim, as representatives of NCEA, in Randolph Circuit Court. The complaint alleged that NCEA was an unincorporated association based in Englewood, Colorado. It further alleged that the assets held by Peoples Loan and Mr. Hendrickson on behalf of Mr. Martin were the property of the NCEA to which they should be transferred. The complaint was dismissed by the Randolph Circuit Court on April 11, 1984, after a finding that NCEA was "a mere alter ego or sole proprietorship of * * * Martin," and not a separate entity.

On November 14, 1983, a complaint was filed in Federal District Court in Indianapolis, Indiana, by the Exchange National Bank of Colorado (Exchange) against Peoples Loan, Mr. Hendrickson, and others. Exchange is the Colorado-appointed administrator of the Estate of Roy Dickson, a deceased NCEA member. The complaint sought seizure of the assets held by Peoples Loan and Mr. Hendrickson on Mr. Martin's behalf and appointment of a receiver to take custody of these assets until an accounting could be had and the assets distributed appropriately. On April 19, 1984, the United States as party defendant was joined as party to the proceedings. A motion of the United States to intervene and its complaint in intervention in the same cause of action were filed on June 21, 1984. The

motion to intervene was granted by the court on June 17, 1985, at which time the United States was released as defendant and permitted to file its complaint in intervention. This Court has not been advised as to the disposition of this proceeding.

On November 16, 1983, the Randolph Circuit Court entered an order appointing Peoples Loan as the administrator of the Estate of Larry Dale Martin (the estate) in Indiana. Such order granted Peoples Loan limited authority to "take charge of and to preserve * * * [the property of the estate] until such time as the questions as to ownership may be judicially determined." During the course of the administration of the estate, approximately 400 NCEA members have filed claims against the estate seeking the return of assets held by Mr. Martin in their NCEA accounts. In addition, various actions have been filed during 1984 against Peoples Loan as administrator of the estate, claiming an interest in the NCEA accounts held by Mr. Martin at the time of his death.

On November 29, 1983, Peoples Loan, as administrator of the estate, took possession from Mr. Hendrickson of 0.48 bags of silver coins, 54 Krugerrands, and one check in the amount of $68,000.50. Because Peoples Loan lacked the facilities to store the remaining assets of the estate, such assets were kept in Silver Towne's vaults.

On December 8, 1983, Mr. Hendrickson and Peoples Loan entered into a "storage contract" in which Mr. Hendrickson agreed to store property of the estate, including 460.48 bags of silver coins and 29.87 bags of clad coins. Such contract was approved by the Randolph Circuit Court on January 6, 1984. On December 16, 1983, an employee of Mr. Hendrickson signed a receipt for the assets of the estate being held at Silver Towne under such storage contract. Such receipt indicated that Mr. Hendrickson held 435 bags of silver coins and 29.87 bags of clad coins. On May 7, 1984, Peoples Loan filed a petition in Randolph Circuit Court, seeking to amend the storage contract to show that Mr. Hendrickson held only 435 bags of silver coins, and not 460.48 bags as indicated in the original storage contract. On January 13, 1984, an agent of Mr. Hendrickson purchased

insurance coverage in the amount of $3,600,000 in order to insure the coins held by him.

On December 19, 1983, Peoples Loan, acting as administrator of the estate, filed an inventory listing the property of the estate. Such property included $68,000.50 in cash due Mr. Martin from Silver Towne, $59,843.12 in an NCEA checking account maintained at Peoples Loan, 54 Krugerrands with a total value of $22,233.96, 460.48 bags of silver coins worth $3,453,600, and 29.87 bags of clad coins with a total value of $89,610.

On April 13, 1984, the Internal Revenue Service made an assessment against Peoples Loan with respect to its tax year ended December 31, 1983, and sent it a notice and demand for payment of $113,250 as Federal income taxes. In a notice of jeopardy assessment and right of appeal, the IRS determined that under section 6867, Peoples Loan was in physical possession of $40,000 in a checking account and 25 bags of silver valued at $186,500 and that such possession tended to "prejudice or render ineffectual collection of income tax" for 1983. The IRS recorded a notice of Federal tax lien against Peoples Loan in the office of the Recorder of Randolph County, Indiana. Such notice stated that the lien applied only to' the $40,000 in cash and the 25 bags of silver coins which were in the possession of Peoples Loan and which were originally deposited by Mr. Martin.

On April 13, 1984, respondent also made an assessment against Mr. Hendrickson with respect to his 1983 tax year and sent him a notice and demand for payment of $1,834,500 as Federal income taxes. In a notice of jeopardy assessment and right of appeal, respondent determined that under section 6867, Mr. Hendrickson was in physical possession of 465.48 bags of silver valued at $3,578,000, 54 Krugerrands valued at $23,000, and $68,000.50 in cash and that such possession tended to "prejudice or render ineffectual collection of income tax" for 1983. Respondent recorded a notice of Federal tax lien against Mr. Hendrickson in the office of the Recorder of Randolph County, Indiana. Such notice stated that the lien applied only to the 465.48 bags of silver coins, 54 Krugerrands, and $68,000.50 in cash which were in the possession of Mr. Hendrickson and which were held on Mr. Martin's account.

On April 23, 1984, Mr. Hendrickson and Peoples Loan filed separate requests for administrative review with respondent of the jeopardy assessments made against them. On May 24, 1984, the associate chief of respondent's Appeals Office in Indianapolis, Indiana, notified petitioners that a review had found such assessments to be "reasonable under the circumstances."

On June 8, 1984, petitioners jointly filed an action with the Federal District Court for the Southern District of Indiana seeking review of respondent's jeopardy assessment under section 7429. This Court has not been advised as to the disposition of this proceeding.

On June 12, 1984, the Commissioner issued separate notices of deficiency to Mr. Hendrickson and to Peoples Loan, as possessors of certain cash. He determined a deficiency of $1,834,500.25 in Mr. Hendrickson's Federal income tax for 1983 as a possessor of certain cash, and he also determined a deficiency of $113,250 in Peoples Loan's Federal income tax for 1983 as a possessor of certain cash.

## OPINION

The principal issue for our decision is whether petitioners are liable for deficiencies under section 6867 as possessors of cash[3] which they allege they hold on behalf of Mr. Martin's estate.

Section 6867 was enacted in 1982 to supplement procedures available to the Commissioner relating to jeopardy and termination assessments. In the usual case, the Commissioner may not assess and collect any income tax unless he follows certain procedures designed to allow the taxpayer to contest the existence and amount of the determined deficiency before payment thereof. Such procedures include issuance of a written notice of deficiency to the taxpayer, followed by a 90-day (or 150-day) period during which the taxpayer may petition this Court for review of the Commis-

---

[3]All references to cash herein also include, as cash equivalents, the gold and silver coins and bullion held by petitioners. After the briefs were filed in this case, the Commissioner adopted a temporary regulation which includes coins and precious metals within the definition of cash equivalents for purposes of sec. 6867. Sec. 301.6867-1T(b)(2)(i) and (ii), Temporary Proced. & Admin. Regs., 51 Fed. Reg. 9949 (Mar. 21, 1986). Although such regulation had not been issued at the time of the notices of deficiency, it is to be applied retroactively. Sec. 7805(b); *Helvering v. Reynolds,* 313 U.S. 428, 433 (1941).

sioner's determination. No assessment may be made until after such period has expired or until after a decision of this Court is final. Sec. 6213(a). However, this deficiency procedure need not be followed when the Commissioner reasonably believes that collection of a deficiency will be jeopardized by delay. In such a case, the Commissioner may declare that such jeopardy exists and immediately assess the tax (sec. 6861(a)), or may, in an appropriate case, immediately terminate the taxpayer's tax year and assess the tax due for such shortened tax period (sec. 6851). Thus, the jeopardy and termination assessment procedures permit immediate assessment of the tax without a preassessment notice of deficiency. In either case, however, the Commissioner must send a statutory notice to the taxpayer within 60 days after such summary action is taken. Secs. 6851(b), 6861(b).

For many years, there was no right to judicial review of whether the Commissioner had acted properly in making a jeopardy assessment. *Durovic v. Commissioner*, 487 F.2d 36, 40-41 (7th Cir. 1973), affg. and revg. on other issues 54 T.C. 1364 (1970); *Veeder v. Commissioner*, 36 F.2d 342 (7th Cir. 1929), affg. 10 B.T.A. 884 (1928). However, in 1976, Congress provided for limited review of jeopardy and termination assessments. Section 7429 provides that judicial review of such assessments may be undertaken only by Federal District Courts. Sec. 7429(b)(1). In such review, the District Court shall determine whether the making of the assessment is reasonable and whether the amount so assessed is appropriate under the circumstances. Sec. 7429(b)(2). Congress did not provide for judicial review of jeopardy and termination assessments in this Court, and we have no authority to review the jeopardy assessment, as such. *Abrams v. Commissioner*, 82 T.C. 403, 406 (1984).

As noted, even when an assessment is made under section 6851 or 6861, the Commissioner is required to issue a notice of deficiency, which gives the taxpayer the right to have this Court review the determined deficiency. However, Congress considered such procedures not well suited to situations in which the Commissioner has reason to believe that a tax is owing with respect to property but cannot determine the owner of such property. In such cases, the

Commissioner is unable to associate such property with any particular person and therefore cannot determine the existence or amount of deficiency for an identifiable person. H. Rept. 97-760 (Conf.) (1982), 1982-2 C.B. 600, 654.

To alleviate this problem of the Commissioner, section 6867 was enacted. Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 330, 96 Stat. 619. Section 6867 provides in part:

SEC. 6837(a). GENERAL RULE.—If the individual who is in physical possession of cash in excess of $10,000 does not claim such cash—

(1) as his, or

(2) as belonging to another person whose identity the Secretary can readily ascertain and who acknowledges ownership of such cash,

then, for purposes of sections 6851 and 6861, it shall be presumed that such cash represents gross income of a single individual for the taxable year in which the possession occurs, and that the collection of tax will be jeopardized by delay.

(b) RULES FOR ASSESSING.—In the case of any assessment resulting from the application of subsection (a)—

(1) the entire amount of the cash shall be treated as taxable income for the taxable year in which the possession occurs,

(2) such income shall be treated as taxable at a 50-percent rate, and

(3) except as provided in subsection (c), the possessor of the cash shall be treated (solely with respect to such cash) as the taxpayer for purposes of chapters 63 and 64 and section 7429(a)(1).

Section 6867 thus supplements the jeopardy assessment provisions of sections 6851 and 6861, in that it authorizes the Commissioner to make a jeopardy assessment without the necessity of determining a tax deficiency and its amount for an identifiable person. When properly invoked, the section does three things: (1) It creates a new and fictitious taxpayer, the possessor of the unclaimed cash, who is different in law from such person in his individual capacity (*Matut v. Commissioner*, 84 T.C. 803 (1985) (hereinafter *Matut I*)), (2) it creates a statutory presumption that this fictitious taxpayer has a tax deficiency equal to 50 percent of the unclaimed cash, and (3) it creates an additional presumption that the collection of this deficiency is in jeopardy. Sec. 6867(a) and (b).

Although this Court has no authority to review jeopardy assessments (*Abrams v. Commissioner, supra*), we have the authority and responsibility to review the deficiencies in tax

as determined by the Commissioner. In these cases, the deficiencies as well as the fictitious taxpayers to whom the deficiencies relate were created through operation of section 6867. Thus, we must review the evidence to determine whether section 6867 has been properly invoked. We must determine whether the individual possessing the cash, at the time of assessment, neither claimed (a) that the cash was his, nor (b) that the cash (1) belonged to another person, (2) who acknowledged ownership, and (3) whose identity was readily ascertainable by the Commissioner. Sec. 6867(a).

Petitioners argue that section 6867 does not require them to establish the identity of the true owner of the cash. They contend that they can remove themselves from the scope of section 6867 by claiming that the cash belongs to another person whose identity the Commissioner can readily ascertain and by showing that such person acknowledges ownership of such cash. Thus, they claim the cash "belongs" to the Martin estate, and that Peoples Loan and Mr. Hendrickson, as possessors, acknowledge the claimed ownership of such cash by the estate.

The Commissioner, on the other hand, argues that the readily identifiable person who acknowledges ownership of the cash must in fact be its *true* owner. He further argues that this Court lacks jurisdiction to make such an ownership determination. He contends that determining the true owner of the cash is tantamount to a review of the assessment itself. For this reason, he argues a determination of ownership can only come in the form of a review by the District Court pursuant to section 7429.

Contrary to respondent's position here, we have held that, in a proceeding which is properly before us under section 6867, we have the authority to determine the true owner of the cash, and that the person or persons claiming such ownership should be allowed to come forward and prove their claim. *Matut v. Commissioner*, 86 T.C. 686 (1986) (hereinafter *Matut II*).

Respondent further misconstrues the statute in holding that it requires the possessor to establish that the person who acknowledges ownership of the cash is in fact its *true* owner. To avoid the application of the presumptions of section 6867, the statute requires only that the possessor

*claim* that the cash belongs to him or to another identifiable person. A *claim* requires only that an assertion be made as to the existence of a particular fact. This petitioners have done. Peoples Loan claimed that the 25 bags of silver in its possession were the property of the Estate of Martin when it stated so in its petition for letters of administration filed on October 24, 1983, in Randolph Circuit Court. This claim was reiterated as to the bags of silver, and also made as to the NCEA checking account, when both of these items were included in the inventory of assets over which Peoples Loan, as administrator, had taken charge. The inventory of assets was filed in Randolph Circuit Court on December 19, 1983. It has also acknowledged ownership by defending its claim to the cash in the *Mehring* and *Exchange Bank* suits, both instituted prior to the assessments herein. Petitioner Hendrickson acknowledged the estate's ownership of the Martin assets in his possession when he entered into a storage contract on December 8, 1983, in which he agreed to continue to hold the property on behalf of the estate.

The identity of the person or persons by whom the cash is claimed in this case was readily ascertainable by the Commissioner. In our view, the phrase "readily ascertain" means that the Secretary can readily determine the identity of the person so as to be able to determine the existence and the amount of any tax deficiency as to him. The record establishes that the identity of the estate was readily ascertainable. Letters of administration were granted in the Martin estate in November 1983, five months before the assessments in this case. All of the information relative to the creation of the estate and its handling of Martin's assets is a matter of public record in Randolph District Court. The estate has applied for and been assigned a taxpayer identification number by respondent, thus placing respondent on notice of its existence.

The fact that petitioners may be mistaken in their claims that the estate owns the cash is irrelevant. It seems beyond dispute that if petitioners had claimed ownership of the cash, themselves, the Commissioner could not have proceeded under section 6867 regardless of whether petitioner *in fact* was the true owner. With regard to claims that the cash belongs to others, the statute likewise does not require

*petitioners* to prove such claims.[4] Except in the unusual and specific circumstances set forth in section 6867, the task of determining the true owner and true taxpayer is respondent's responsibility, and is to be shown in his statutory notice of deficiency. Sec. 6212(a).

*Matut II* is not to the contrary. In that case, the possessor, Matut, claimed that the cash in his possession at the time of seizure belonged to Lignarolo. Lignarolo claimed that the funds belonged to a Panamanian corporation named COINPA. The Commissioner was unable to readily ascertain the identity of COINPA, which in any event failed to acknowledge ownership. Thus, at the time of seizure, the conditions required by section 6867 were all present and the seizure and issuance of the notice of deficiency were proper. When Matut, as possessor, petitioned this Court to redetermine the deficiency, Lignarolo was allowed to intervene to prove that he was the true owner of the cash.

In the case before us, unlike in *Matut II*, the notices of deficiency are invalid since at the time of assessment the cash was claimed to belong to a readily identifiable person who acknowledged ownership.[5] The conditions upon which respondent is authorized to proceed under section 6867 were not met. Consequently, the fictitious taxpayers "possessors of certain cash" never came into being. Therefore, the statutory notices issued to petitioners in their capacities as possessors of cash are invalid as not authorized by law. Since a valid statutory notice is an essential prerequisite to our jurisdiction (secs. 6212(a), 6213(a); *Shelton v. Commissioner,* 63 T.C. 193 (1974)), this proceeding must be dismissed for lack of jurisdiction.

*An appropriate order will be entered.*

Reviewed by the Court.

---

[4]As noted in our findings of fact, prior to the assessments herein, certain persons, formerly clients of Mr. Martin, had come forward and asserted claims against the funds here in question, and it appears that more such former clients have made claims in the Martin administration proceedings since that time. The least we can say is that at the time of the assessments herein, there were a number of persons who were clearly identifiable on the public record and who were asserting claims to the funds. Petitioners obviously did not agree with such claims, but the statute does not require that they do so.

[5]Although the notice of deficiency was subsequently determined to be invalid in *Matut v. Commissioner,* 88 T.C. 1250 (1987), on appeal (11th Cir. 1987), the Court assumed, arguendo, for the purpose of addressing respondent's motion for summary judgment, that the initial cash seizure by respondent was valid.

STERRETT, CHABOT, NIMS, PARKER, WHITAKER, SHIELDS, HAMBLEN, COHEN, JACOBS, WRIGHT, PARR, WILLIAMS, and WELLS, *JJ.*, agree with the majority opinion.

---

SIMPSON, *J.*, dissenting: The circumstances of this case include the fact that a very large amount of cash was possessed by Peoples Loan and Mr. Hendrickson, and they claimed not to be the owners of the cash. According to them, the cash belonged to the Indiana estate of Mr. Martin. However, although the estate asserted a possessory right to the cash, it did not and could not claim to be the owner. Another estate disputed its possessory right, and many alleged investors in Mr. Martin's plans claimed to be the true owners of the cash. In my view, these circumstances constitute a case for which section 6867 was designed, and I find the interpretation of section 6867 adopted by the majority to be inconsistent with the objective of that section. Therefore, I must dissent.

Congress considered the jeopardy assessment procedures not well suited to situations in which the Commissioner has reason to believe that a tax is owing with respect to property but cannot determine the owner of such property. In such cases, the Commissioner is unable to associate such property with any particular person and therefore cannot determine the existence or amount of deficiency for an identifiable person. H. Rept. 97-760 (Conf.) (1982), 1982-2 C.B. 600, 654. To alleviate this problem of the Commissioner, section 6867 was enacted. Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 330, 96 Stat. 619.

The petitioners argue that section 6867 does not require them to establish the identity of the true owner of the cash. They contend that they can remove themselves from the scope of section 6867 merely by claiming that the cash belongs to another person whose identity can be readily ascertained by the Commissioner and by showing that such person acknowledges ownership of such cash. Thus, they

claim that the cash "belongs" to the estate and that Peoples Loan, as administrator of the estate, acknowledges ownership of such cash. However, under my view of section 6867, it supplements the jeopardy assessment provisions of sections 6851 and 6861 by authorizing the Commissioner to make a jeopardy assessment when he finds an individual in possession of a substantial amount of cash, when that individual denies ownership of the cash, and when the true owner is not readily identifiable. Merely authorizing the Commissioner to make a jeopardy assessment under such circumstances would not alleviate his problem, for he must also compute a deficiency. To solve that aspect of the problem, section 6867 also creates a presumption as to the deficiency owed by the owner of the cash: it presumes that 50 percent of the cash is a deficiency. Thus, section 6867 accomplishes two objectives: when the owner of cash is unknown, it authorizes a jeopardy assessment, and it creates a special deficiency.

Section 7429 gives the District Courts the authority and the responsibility for reviewing a jeopardy assessment to determine whether the assessment is proper, and this Court has no authority to review the assessment. However, we do have the authority and responsibility to review the deficiency determined by the Commissioner. Since the deficiency rests on the applicability of section 6867, we must review the evidence to decide whether that section is applicable. Consequently, we must decide whether the individual possessing the cash claims that it belongs to another person whose identity the Commissioner can readily ascertain and who acknowledges ownership of such cash.

In my view, section 6867 requires that the petitioners do more than merely claim that the cash belongs to someone else. I believe that they must identify the *true* owner of such cash before being relieved of a deficiency under section 6867. See *Matut v. Commissioner*, 86 T.C. 686, 691 (1986). Section 6867 was developed to permit the Commissioner to collect income taxes presumed to be owed by an unidentified owner of cash (H. Rept. 97-760, *supra*, 1982-2 C.B. at 654), and such purpose would be frustrated by allowing the petitioners to avoid its provisions merely by *claiming* that

the cash in question belonged to another and that such person acknowledged ownership of such cash.

Moreover, section 6867 is applicable unless the true owner is "readily identifiable"; it is not enough that the true owner can be identified—his identity must be "readily" ascertainable by the Commissioner. In this case, there is a host of controversy over the ownership of the cash. Peoples Loan claims that as administrator of Mr. Martin's estate in Indiana, it owns the cash. However, the Exchange National Bank has disputed the claim of Peoples Loan. The Exchange National Bank claims to be acting under authority of a Colorado court and claims to be the owner of the cash. Furthermore, more than 400 persons have filed claims against the estate on the grounds that they invested funds in NCEA, that Mr. Martin and NCEA held the funds as their agent, and that they are the owners of the cash; and the total of their claims exceeds the amount of the cash held by Peoples Loan and Mr. Hendrickson.

Under these circumstances, it is clear that the Commissioner cannot readily ascertain the owner of the cash. If the cash were transferred to Peoples Loan, and if the Commissioner made an assessment against it as administrator, he would encounter the risk that the Exchange National Bank or the alleged investors in NCEA would claim that the cash belonged to them and was not to be used to pay any deficiency claimed against Mr. Martin or his estate. The Commissioner does not know against whom to make a jeopardy assessment or to whom to issue a notice of deficiency. He cannot ascertain the true owner of the cash until the completion of protracted litigation, and Congress provided that the procedures of section 6867 are to apply when the true owner is not *readily* identifiable. Consequently, I believe that these facts constitute a case in which section 6867 should be applied.

SWIFT and GERBER, *JJ.*, agree with this dissent.