**Albert MATUT, as the possessor of certain cash, Petitioner–Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

No. 87–5765

United States Court of Appeals, Eleventh Circuit.

Oct. 25, 1988.

Gary R. Allen, Chief, Appellate Section, Tax Div., Dept. of Justice, Bruce R. Ellisen, William S. Rose, Jr., David E. Carmack, Washington D.C., for respondent-appellant.

Michael J. Osman, P.A., Miami, Fla., for petitioner-appellee.

Before ANDERSON and EDMONDSON, Circuit Judges, and ATKINS [*], Senior District Judge.

ANDERSON, Circuit Judge.

In this appeal, we examine the propriety of a termination assessment and subsequent notice of deficiency issued pursuant to the jeopardy presumptions of § 6867 of the Internal Revenue Code ("Code") to Albert Matut in his capacity as possessor of $175,000 cash. We conclude that the assessment and notice were proper and thus we vacate the decision below and remand this case to the Tax Court with instructions to enter a deficiency judgment against Albert Matut as possessor of certain cash.

## I. FACTS AND PROCEDURAL BACKGROUND

Mario Lignarolo allegedly was employed by COINPA, a Panamanian corporation,[1] to collect money owed to COINPA and to deposit the collected cash in COINPA's accounts at Miami area banks. Lignarolo would collect, on average, $20,000 daily.

In 1982, the Miami banks instituted a policy of refusing single cash deposits in excess of $10,000; hence, Lignarolo was forced to hire individuals to exchange the collected cash for money orders or cashiers checks whose face value was under $10,000 and to deposit these smaller amounts in COINPA's accounts. Albert Matut was one of the individuals so employed by Lignarolo.

On April 21, 1983, Lignarolo gave Matut $175,000 to exchange. The Palm Beach County Sheriff discovered Matut in possession of this large amount of cash. Matut denied ownership of the cash and asserted that it belonged to Lignarolo. The sheriff seized the cash and notified the IRS and Lignarolo. A week later, the IRS utilized the jeopardy presumption of § 6867 of the Code and made a termination assessment in the amount of $87,500 (i.e., 50% of the seized cash) against Matut as possessor of certain cash.

Shortly after the seizure of the cash, Lignarolo reimbursed COINPA the $175,000 from his own pocket. Apparently, Lignarolo believed he was obligated to do so under the terms of his arrangement with COINPA. After litigation, the sheriff eventually returned the remaining 50% of the seized cash to Lignarolo.

In July 1983, Matut and Lignarolo petitioned the district court to review the reasonableness of the termination assessment. Section 7429 of the Code authorizes the district court to review the circumstances under which a termination assessment was made to determine whether the assessment itself and the amount of the assessment were reasonable under the circumstances.[2]

---

[*] Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

[1.] There is some doubt that COINPA actually exists. At no point in these proceedings has the taxpayer come forward with probative evidence supporting COINPA's existence. COINPA is not registered with the State of Florida as a foreign corporation qualified to conduct business in Florida nor has COINPA filed any federal tax returns. There was evidence in the record of a Spanish language contract between COINPA and INAVI, another Panamanian corporation, which laid out the terms of a currency exchange operation involving the two companies in which Colombian pesos were converted into American dollars and visa-versa.

[2.] The district court does not have jurisdiction under § 7429 to review the actual amount of the tax assessed. This review is accomplished by either the Tax Court, the Claims Court, or the district court after the IRS issues a notice of deficiency to the taxpayer and the taxpayer petitions for redetermination. In this case, of course, if § 6867 is applicable, the amount of the tax clearly was correct since the statute fixes the tax at 50% of the amount of the unclaimed cash.

*See Schaefer v. United States,* 656 F.Supp. 631, 633 (E.D.Wis.1987). At the district court hearing, Lignarolo testified that COINPA owned the cash when it was seized, that on the seizure date Lignarolo was the authorized custodian of COINPA's money, and that subsequent to the seizure (but prior to the district court's § 7429 hearing) Lignarolo succeeded COINPA as the legal owner of the cash by virtue of his reimbursement to COINPA. The district court found that the "assessment was reasonable under the circumstances and that the amount assessed was appropriate" and therefore dismissed Matut's and Lignarolo's complaint.

In June 1984, the IRS issued a statutory notice of deficiency in the amount of $87,500 to Matut in his capacity as the possessor of the seized cash. Matut petitioned the Tax Court for a redetermination of the tax and Lignarolo moved to intervene as a party petitioner. Apparently the basis for Matut's and Lignarolo's challenge was that § 6867 was no longer applicable. Since by that time Lignarolo owned the cash and acknowledged his ownership, Matut and Lignarolo claimed that Lignarolo should be substituted for Matut as the taxpayer. Lignarolo's petition to intervene was denied because the Tax Court concluded that Lignarolo could not be a party in a redetermination hearing unless he had been issued a statutory notice of deficiency, which he had not. The Tax Court noted, however, that Lignarolo would be allowed to testify as to his ownership interest at Matut's redetermination hearing. *Albert Matut and Albert Matut, as possessor of certain cash v. C.I.R.,* 84 T.C. 803 (1985) (*"Matut I"*).[3]

The government moved for summary judgment on Matut's redetermination petition on the basis that the Tax Court did not have jurisdiction to determine the true owner of the cash. The Tax Court rejected this argument. It explained that "[the govern-

ment's] primary contention would deprive both [Matut] and Lignarolo of any remedy in this court (and perhaps in any court), notwithstanding the direction and necessary implication in § 6867(c) that once the true owner of cash is identified that person has the right to have the tax liability of the owner determined by us in this proceeding." *Albert Matut as possessor of certain cash v. C.I.R.,* 86 T.C. 686, 688–89 (1986) (*"Matut II"*).

On the merits of Matut's redetermination petition, a ten-member majority of the Tax Court voted to dismiss the petition for lack of jurisdiction because, in the majority's opinion, the government issued the statutory notice of deficiency to the wrong person. *Albert Matut as possessor of certain cash v. C.I.R.,* 88 T.C. 1250 (1987) (*"Matut III"*). The majority concluded that the government was on notice by virtue of the § 7429 proceedings in the district court that COINPA owned the cash on the seizure date, that Lignarolo assumed ownership of the cash prior to the district court hearing, and that both COINPA and Lignarolo had sufficiently acknowledged ownership. The majority concluded that the statutory notice of deficiency should have been issued to COINPA or Lignarolo as the true owner rather than Matut. Because the deficiency notice was issued to the wrong taxpayer (in the majority's opinion), they concluded that the Tax Court had no jurisdiction to adjudicate Matut's redetermination petition.

For the reasons explained below, we vacate the judgment of the Tax Court and remand.

## II. STRUCTURE OF THE STATUTE

Section 6867 of the Internal Revenue Code creates a presumption of jeopardy—thereby allowing a § 6851 termination assessment to be made—whenever the possessor of $10,000 or more of cash or cash

---

3. We note the apparent inconsistency between the denial of Lignarolo's petition to intervene and the fact that the Tax Court did permit Lignarolo to present his claim of ownership. Whatever the appropriate procedure, it is clear from the structure of the statute that a person with a colorable claim of true ownership must be afforded an opportunity in the Tax Court to present his claim for litigation. Section 6867(c). This was effectively done in the proceedings here, and in any event Lignarolo has not appealed to contest the denial of his motion to intervene.

equivalents disclaims ownership of the money and no other person whom the IRS can readily identify as the owner comes forward and sufficiently acknowledges ownership of the cash. The cash is presumed to be previously untaxed income of the possessor earned within a single year and is taxed at a 50% rate. If the true owner sufficiently acknowledges ownership and his identity can be readily ascertained, he can be substituted for the possessor as the taxpayer so that the owner's actual tax liability—rather than the presumed 50% tax—can be calculated. 26 U.S.C. § 6867. Section 6867 provides as follows:

(a) General Rule. If the individual who is in physical possession of cash in excess of $10,000 does not claim such cash—

(1) as his, or

(2) as belonging to another person whose identity the secretary can readily ascertain and who acknowledges ownership of such cash, then, for purposes of Section 6851 [termination assessment] and 6861 [jeopardy assessment] it shall be presumed that such cash represents gross income of a single individual for the taxable year in which the possession occurs, and that the collection of tax will be jeopardized by delay.

(b) Rules for assessing. In the case of any assessment resulting from the application of subsection (a)—

(1) The entire amount of the cash shall be treated as taxable income for the taxable year in which possession occurs,

(2) Such income shall be treated as taxable at a 50% rate, and

(3) Except as provided in subsection (c), the possessor of the cash shall be treated (solely with respect to such cash) as the taxpayer for purposes of Chapters 63 and 64 and Section 7429(a)(1).

(c) Effect of later substitution of true owner. —If, after an assessment resulting from the application of subsection (a), such assessment is abated and replaced by an assessment against the owner of the cash, such later assessment shall be treated for purposes of all laws relating to the lien, levy and collection as relating back to the date of the original assessment.

## III. JURISDICTION TO DETERMINE OWNERSHIP

In the Tax Court, the government argued that the Tax Court had no jurisdiction to determine ownership of the cash. *See Matut II.* The government argued that the Tax Court is a court of limited jurisdiction, and that its only jurisdiction is to determine the correctness of the notice of deficiency which in this case was issued to Matut as possessor. Since no notice of deficiency was issued to the true owner, the government argued that the true owner had no "ticket to the Tax Court" and that the Tax Court accordingly had no jurisdiction to determine ownership.

The Tax Court rejected the government's argument, citing the legislative history that the true owner would be " 'retroactively substituted for the possessor *for all purposes,*' " 86 T.C. 686 at 691 (*quoting* legislative history) (emphasis added by Tax Court). The Tax Court held that the purpose of the statute required the Tax Court to determine ownership. *Id.*

On appeal, the government concedes that the Tax Court had jurisdiction to determine ownership. We agree, and affirm this holding of the Tax Court. Section 6867(c) contemplates that the true owner can claim ownership after the notice of deficiency is issued to the possessor, i.e., during proceedings in the Tax Court. If the claim of ownership is successful, the statute contemplates that the true owner may be substituted for the possessor for all purposes. To hold otherwise would undermine the effective operation of the statute.

## IV. MERITS

As discussed above, the Tax Court majority concluded that the provisions of § 6867(c) had been satisfied so that Lignarolo and/or COINPA could be substituted as the true owner. *See Matut III.* In other words, the Tax Court majority concluded that Lignarolo and COINPA were "readily ascertainable" and had sufficiently "acknowledged" their ownership of the cash.

Section 6867(a)(2). We disagree and thus vacate the judgment of the Tax Court.

### A. *Owner on the Seizure Date*

■ We believe that the most reasonable interpretation of "owner" as that term is used in § 6867 is that the statute refers to the owner on the seizure date. The purpose of the statute is to tax the presumably unreported taxable activity which resulted in the accumulation of the cash. This taxable activity is taxed either at the 50% rate provided in § 6867(b), if the owner does not come forward and acknowledge ownership, or at the owner's tax rate if he comes forward and allows his actual tax liability to be computed. In either case, the person responsible for generating the income pays the tax, either in absentia (at the statutory 50% rate) or directly (if the owner comes forward and acknowledges ownership). If the owner of the cash chooses to come forward and acknowledges ownership, he is afforded the opportunity to show that, in fact, the money had previously been taxed. If the money was previously unreported as income, it can be taxed at the owner's actual tax rate, taking into account any deductions, credits or other income he might have accumulated in that tax year.

However, allowing a person who becomes the owner subsequent to the seizure to be substituted into the § 6867 procedure would defeat the statutory purpose of taxing the person or entity responsible for the accumulation of the cash. A subsequent owner has no necessary affiliation with the activity which generated the cash.

In addition, allowing a subsequent owner such as Lignarolo to qualify as the owner under § 6867 creates the undesirable potential that the true owner (i.e., the owner on the seizure date) could use a "strawman" to claim the cash in order for the true owner to avoid having to subject himself to taxation. In such a scenario, the true owner could transfer ownership—legitimately or otherwise—to the strawman, who would claim the cash, pay the tax on it, and later transfer ownership back to the true owner. We can think of numerous reasons why the true owner might seek to avoid presenting himself for taxation. For example, the previously unreported income might have been generated illegally. Even if the money was earned legally, another possibility is that the true owner could use a strawman whose tax rate was lower than his to claim the cash, thereby reducing the true owner's tax liability on the cash.

Our conclusion that only the true owner on the seizure date can be substituted into the § 6867 proceedings means that only COINPA, and not Lignarolo, could claim the status of true owner and be substituted into the proceedings for the possessor. This is so because it is not disputed that COINPA was the true owner as of the seizure date. Lignarolo's subsequent acquisition is irrelevant. We consider next whether COINPA sufficiently acknowledged ownership to be entitled to substitution.

### B. *Insufficient Acknowledgement of Ownership by COINPA*

■ A careful reading of the statute reveals two preconditions which must be met by a person to attain the status of the true owner who can be substituted: (1) the IRS must be able to "readily ascertain" the true owner's identity; and (2) the true owner must "acknowledge" his ownership of the cash. *See* 26 U.S.C. § 6867(a)(2), (c). We assume *arguendo*, but expressly do not decide, that the IRS could readily ascertain the identity of COINPA. Contrary to the holding of the Tax Court majority, however, we conclude that COINPA, through Lignarolo, did not adequately acknowledge its ownership interest.

The record in this case reveals nothing more than a cursory indication by Lignarolo that COINPA owned the cash at the seizure date. A "contract" between COINPA and Lignarolo was entered into evidence as an exhibit at the § 7429 hearing before the district court. The alleged contract, actually a letter written in Spanish from COINPA to Lignarolo, sets forth Lignarolo's duties and responsibilities to COINPA as follows:

> You are authorized to receive payments in dollars, in the form of cash, cashiers

checks, traveler's checks, or any other type of guaranteed bank transaction which are the result of the purchase of dollars from Colombia.... Once the funds are received by you, we will let you know in which account they should be deposited, or if they should be sent to COLOMBIA, PANAMA or any other country to fulfill any contract that we might be negotiating.

In addition, a second Spanish language contract between COINPA and INAVI, another Panamanian corporation, was presented as evidence. The contract described a relationship whereby INAVI would buy United States currency from COINPA and would pay COINPA in Colombian pesos plus a 3% commission.

However, the sources of the $20,000 which Lignarolo collected daily and the activity which generated the cash were unspecified. COINPA was not registered to do business in Florida. It had filed no federal income tax returns. After a careful consideration of the purpose of the statute, we conclude that there has not been a sufficient "acknowledgement" by COINPA of its ownership of the cash.

Under the statute, the purpose of the requirement that the true owner acknowledge ownership of the cash, § 6867(a)(2), is to permit substitution of the true owner in place of the possessor so that the activities that produced the cash can be taxed at the true owner's actual tax rates and other circumstances, rather than at the presumed 50% tax rate of the possessor. Pursuant to that purpose, we hold that a sufficient "acknowledgement" by COINPA would require that COINPA submit itself to the IRS and the procedures which are available to the IRS to determine the amount of tax owed, if any, on the activities which generated the cash.[4]

The bald indication in this case that COINPA owned the cash falls far short of satisfying the statutory requirement, and thus we conclude that the Tax Court erred in concluding that COINPA had sufficiently "acknowledged" ownership.

**4.** Since the bald indication of COINPA's ownership in this case is clearly insufficient, we need not decide the precise parameters of "acknowl-

### C. *Assessment Against Possessor Remains Valid*

■ Since only the true owner at the time of seizure could be substituted for the possessor, since COINPA was the true owner at that time, and since COINPA cannot be substituted because it did not sufficiently acknowledge ownership, it follows that in this case there has been no substitution of a true owner in place of the possessor of the cash. Thus, the assessment against the possessor remains viable. The judgment of the Tax Court is accordingly vacated and the case is remanded to the Tax Court with instructions to enter a deficiency judgment against Albert Matut as possessor of the cash.

### V. CONCLUSION

We agree with the Tax Court that it did have jurisdiction to determine ownership of the cash, and we affirm the holding of the Tax Court to that extent. However, for the reasons above stated, the judgment of the Tax Court is vacated and the case is remanded with instructions to enter a deficiency judgment against Matut as possessor of the cash.

AFFIRMED *in part*, VACATED *in part, and* REMANDED.

edgement," i.e., what actions are required to constitute sufficient "acknowledgement."