PATRICK J. RYAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ryan v. Commissioner
Docket No. 21405-85.
United States Tax Court
T.C. Memo 1989-297; 1989 Tax Ct. Memo LEXIS 309; 57 T.C.M. (CCH) 747; T.C.M. (RIA) 89297; June 19, 1989. Herbert M. Gannet, for the petitioner. Richard F. Flaherty and William S. Garofalo, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated April 2, 1985, respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Addition to Tax
Year
Deficiency
Sec. 6653(a) [1]
1978
$  24,565.00
$  1,228.00
1979
130,108.00
6,505.00
1980
90,466.00
4,523.00
*311 After concessions the remaining issues for decision are: (1) whether respondent's determination of petitioner's cost of marijuana sold for the taxable years in issue was erroneous; (2) whether various expenses paid by petitioner for the taxable years in issue were ordinary and necessary business expenses pursuant to section 162(a); and (3) whether any resulting underpayment by petitioner was due to negligence or intentional disregard of rules under section 6653(a). FINDINGS OF FACT Some of the facts of this case have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner resided in Roselle Park, New Jersey, when he filed the petition in this case. Petitioner timely filed his income tax returns for 1978, 1979, and 1980. At all times during the years in issue, petitioner was a cash basis taxpayer. During the years in issue, petitioner engaged in the business of selling marijuana, *312 an illegal activity. The marijuana sold by petitioner was grown in South America. The marijuana was then smuggled into the United States and sold to the first of several levels of wholesalers. Petitioner operated within one of these levels. After moving through the various wholesale levels, the marijuana would eventually be sold to a distributor who sold it on the retail market. Petitioner's supplier would generally contact him whenever a marijuana shipment was available. Petitioner would then decide whether to make a purchase. When petitioner purchased marijuana, the seller generally delivered it to one of petitioner's "stash houses." Stash houses are secluded houses rented by petitioner for the unloading and storage of marijuana. After the marijuana arrived at the stash house, petitioner would weigh the product and inventory it by the control number placed on the bales in South America. In order to avoid being caught or associated with the marijuana by the police, petitioner rented the stash houses under fictitious names. Petitioner stored his marijuana in a stash house for several weeks until he distributed it among other wholesalers. Petitioner used a stash house until *313 it became "burned out," which was when petitioner felt it was under suspicion or overused. After a stash house burned out, petitioner would abandon it and rent a new one. Petitioner never slept in the stash houses. Nor did he use any portion of the stash houses for any other personal use. Petitioner introduced into evidence summaries of his purchase records. The summaries reflected the following purchases during the years in issue: Pounds
Price
Date
Purchased
Per Pound
Total
1978
March 29
302.94
$   310
$  93,910.00
Aug. 3
295.00
250
73,750.00
Nov. 11
225.80
270
60,966.00
823.74
$ 228,626.00
1979
Jan. 26
204.14
$   305
$    62,260.00
Jan. 27
115.84
285
33,015.00
March 6
250.38
340
85,125.00
March 21
144.15
350
50,450.00
March 22
892.15
310
276,565.00
April 18
317.90
275
87,420.00
April 29
172.02
270
46,445.00
April 29
197.52
270
53,330.00
May 22
21.00
280
5,880.00
July 27
548.19
280
153,490.00
Aug. 4
64.69
280
18,113.00
Nov. 14
86.73
1,275
110,580.00
Dec. 13
34.05
1,275
43,410.00
3,048.76
$ 1,026,083.00
1980
Jan. 31 389.24 260
$ 101,200.00
April 14
454.51 264
119,990.00
Aug. 1
1,045.98 269
281,370.00
Sept. 30
975.636
290.50
283,420.00
Nov. 17
10.00 365.00
3,655.00
2,875.366
$ 789,635.00
*314 The purchases of November 14 and December 13, 1979, were for "sinsemilla," a high domestic grade of marijuana. Petitioner compiled these summaries from his records in preparation for respondent's examination of petitioner's income tax returns for the years in issue. These records did not disclose from whom the purchases were made. At trial, petitioner declined to name the persons from whom he purchased his marijuana. Because of the illegal nature of his marijuana business, petitioner used cash rather than checks for all of his business transactions. Petitioner traveled to and from the stash houses in cars that were rented under fictitious names. Rental cars were also used to deliver petitioner's marijuana to certain wholesale customers. Petitioner traveled throughout the northeast to meet with his wholesalers. Because neither petitioner nor his business contacts had offices, business discussions were held at restaurants and other meeting places. When petitioner met with his customers he usually paid the restaurant bill. Petitioner's suppliers usually paid the bill when petitioner met with them. For 1978, petitioner recorded his entertainment expenses in an expense ledger. *315 For 1979 and 1980, petitioner maintained a diary of his entertainment expenses. The diary was referenced by code names for petitioner's customers. Petitioner hired armed guards to protect the marijuana stored at the stash houses. Petitioner also employed people to pick up and deliver the marijuana. The compensation for these employees was generally computed per pound guarded or delivered, as applicable. Petitioner was arrested in 1977 and convicted in 1982 for possession and sale of marijuana. Petitioner's expert witnesses, Daniel Poore and Donald Kunesh, were convicted of drug offenses in 1976 and 1979, respectively. Petitioner's gross marijuana sales for the years at issue were: 1978
$ 263,520.00
1979
1,157,201.00
1980
965,828.33
For the years at issue, petitioner included Schedules C with his income tax returns on which he listed his occupation as "wholesaler." Petitioner reported the following net profits from his marijuana business on Schedules C for the respective years: 1978
$  1,666.00
1979
65,333.00
1980
66,344.14
In his statutory notice of deficiency respondent disallowed portions of petitioner's claimed cost of goods *316 sold for the years at issue. Respondent based his disallowance on petitioner's "absence of adequate records." Respondent disregarded petitioner's records and instead determined petitioner's cost of goods sold "on the basis of a gross-profit mark-up of 45 percent over the cost of the drugs" sold. Accordingly, respondent reduced petitioner's cost of goods sold as follows: 1978
1979
1980
CGS as reported
$  228,558
$ 1,023,874
$  789,592
CGS as revised
181,738
798,070
631,139
Reduction in CGS
$   46,820
$   225,804
$  158,453
Petitioner claimed the following deductions on his Schedule C: 1978
1979
1980
Car and truck expenses
$ 16,532 $  7,213
$  3,268
Legal and professional services
-    22,715
17,999
Rent
4,458 6,186
9,068
Travel
1,805 -   -   Travel and entertainment
-    13,284
4,504
Airplane expense
960 50
7,601
Food, tips and entertainment
3,828 -   -   Service fees
8,987 9,085
9,405
Miscellaneous
3,466 7,679
7,371
Office
-    1,782
-   Reimbursements
(6,740)
-   -   $ 33,296 $ 67,994
$ 59,216
Respondent *317 disallowed portions of petitioner's claimed deductions in 1978, 1979 and 1980 for rent and utilities, and for service fees. [2] In addition, respondent entirely disallowed petitioner's claimed deductions in 1979 and 1980 for travel and entertainment. Respondent further disallowed, in part, petitioner's claimed deductions for miscellaneous and office expenses for 1979. Finally, respondent determined that part of petitioner's underpayment for the years at issue was due to negligence or intentional disregard of the rules and regulations and applied the 5 percent addition to tax under section 6653(a). OPINION Cost of Goods Sold
Whether Respondent's Determination Was Arbitrary
As a preliminary matter, we first address petitioner's argument that respondent's determination of petitioner's cost of *318 goods sold was arbitrary and capricious. Respondent's determinations in a notice of deficiency are presumed correct, and unless otherwise provided in the Internal Revenue Code or the Tax Court Rules of Practice and Procedure, petitioner bears the burden of proving otherwise. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Where petitioner shows respondent's notice of deficiency was arbitrary and excessive, however, the burden of going forward with the evidence is shifted to respondent. Helvering v. Taylor,293 U.S. 507, 515 (1935). Petitioner argues that respondent's determination of petitioner's cost of goods sold was arbitrary and capricious. Petitioner initially asserts that respondent's mathematical formula, and correspondingly the notice of deficiency, was arbitrary and imprecise on its face. Petitioner argues further, in the alternative, that respondent's use of an unsupported mathematical formula in lieu of credible books maintained by petitioner was arbitrary and capricious. In asking this Court to find the statutory notice arbitrary, *319 petitioner is asking us, in effect, to look behind the notice. Jackson v. Commissioner,73 T.C. 394, 400 (1979); Llorente v. Commissioner,74 T.C. 260, 264 (1980), affd. in part and revd. in part 649 F.2d 152 (2d Cir. 1981). "As a general rule, this Court will not look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations." Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974)(citations omitted); Llorente v. Commissioner,74 T.C. at 264; Jackson v. Commissioner,73 T.C. at 400. The underlying rationale for the foregoing is the fact that a trial before the Tax Court is a proceeding de novo; our determination as to a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level. [Greenberg's Express, Inc. v. Commissioner,62 T.C. at 328; *320 citation omitted.] Under very limited circumstances, this Court has recognized an exception to its general rule of not looking behind the statutory notice. This rare exception applies in cases involving unreported illegal income where respondent introduces no substantive evidence and rests on the presumption of correctness, and petitioner challenges the notice of deficiency on the grounds that it is arbitrary. Dellacroce v. Commissioner,83 T.C. 269, 280 (1984); Llorente v. Commissioner,74 T.C. at 264; Jackson v. Commissioner,73 T.C. at 394. In Jackson v. Commissioner, supra, the Commissioner determined that the taxpayer received unreported income from illegal drug trafficking activities. The Commissioner based his determination on information provided by an informant. At the trial before this Court, the Commissioner's evidence consisted solely of the testimony of two agents offered to demonstrate that the determination was not arbitrary. The Commissioner introduced no evidence to support the deficiency determination. *321 This Court found the informant unreliable and consequently held the Commissioner's determinations arbitrary and excessive. We based our holding in Jackson, in part, on the somewhat analogous case of Gerardo v. Commissioner,552 F.2d 549 (3d Cir. 1977), affg. in part and revg. in part a Memorandum Opinion of this Court. This Court in Gerardo determined that the taxpayer received unreported income from illegal gambling activity for a period of time. The Court of Appeals for the Third Circuit found that adequate evidence supported this Court's determination that the taxpayer received unreported income from a lottery operation for part of the period at issue. For the remaining part of the period at issue, however, the Court of Appeals held that there was no evidence in the record to link the taxpayer to the illegal activity. Accordingly, the Court of Appeals held the Commissioner's determination for that period arbitrary. In another case involving arbitrary determinations, the Commissioner's determination that a taxpayer had unreported income based upon, inter alia, alleged expenditures for cocaine was held arbitrary and without foundation. Llorente v. Commissioner,649 F.2d 152 (2d Cir. 1981), *322 affg. in part and revg. in part 74 T.C. 260 (1980). The Court of Appeals for the Second Circuit held that the "evidence of record must at least link the taxpayer with some tax-generating acts, such as the purchase or sale of controlled substances. * * * A mere peripheral contact with illegal conduct is insufficient." 649 F.2d at 156 (citations omitted). These exceptions to the general presumption of correctness are predicated upon unsupported assertions by the Commissioner of unreported income from an illegal activity. The underlying rationale is that: Otherwise the Commissioner could, merely by arbitrarily issuing a naked assessment, place upon the taxpayer the unfair, and at time impossible, burden of proving a negative, that he did not receive the illegal income assessed against him. [Llorente v. Commissioner,649 F.2d at 156.] The instant case does not, however, involve respondent's assertion that petitioner received unreported income from an illegal activity, selling marijuana. Indeed, petitioner does not dispute that he received income from selling marijuana. In fact, he reported it on his income tax returns. Therefore, *323 he is not burdened with having to prove a negative. Rather, he must prove that respondent erroneously disregarded petitioner's reported cost of goods sold, a figure supplied by petitioner. Accordingly, this case does not fit within the exception to the general presumption of correctness. Cf. Tokarski v. Commissioner,87 T.C. 74 (1986) (holding that the Commissioner does not have the burden of producing evidence linking the taxpayer to an income producing activity where the taxpayer's receipt of the money at issue is undisputed). Moreover, respondent's disregard of petitioner's "coded" books and records was not unreasonable. Because of the illegal nature of petitioner's business, he supplied no supporting documents. Nor did petitioner provide the names of his suppliers, from whom respondent could have verified the records. Under such circumstances, respondent's disregard of petitioner's books and records cannot be viewed as arbitrary. Accordingly, we do not address petitioner's further arguments concerning the arbitrariness of respondent's method of calculating petitioner's cost of goods sold. Whether Respondent's Determination of Petitioner's Cost of Goods *324 Sold was Erroneous
We now address whether petitioner has met his burden of proving that respondent's determination of cost of goods sold was erroneous. The parties do not dispute petitioner's entitlement to deduct the cost of marijuana sold from his gross sales. Rather, the parties disagree on the proper amount of cost of goods sold. This issue is primarily factual. Petitioner maintains that his reported cost of goods sold was supported by accurate and proper books and records. Respondent, on the other hand, asserts that petitioner's books and records were not reliable and that his determination of petitioner's cost of goods sold was a reasonable approximation. Petitioner attempts to support his position by arguing that his underlying books and records, which he asserts were accurately summarized in the records introduced in evidence, correctly reflected his cost of marijuana sold. Petitioner's certified public accountant, Andrew V. Aldi (Aldi), testified that petitioner's underlying purchase and sales sheets were adequate and accurate business records. Aldi prepared petitioner's 1978 and 1979 income tax returns based upon these records and assisted petitioner in the preparation *325 of his 1980 income tax return under Aldi's guidance. Petitioner testified that he maintained contemporaneous purchase and accounts payable records of his marijuana purchases. Petitioner further testified that these records were kept by code names that petitioner used for his suppliers. These underlying records are not, however, in evidence. Petitioner did introduce into evidence summaries of his records, which he compiled in preparation for respondent's examination of petitioner's income tax returns for the years at issue. Respondent challenges the accuracy of petitioner's records and summaries, as well as petitioner's credibility. Respondent's dispute with petitioner's summary records focuses on the various recorded costs per pound of marijuana, and in particular, the complete lack of verification of the purchase price due to the codes petitioner used. Moreover, respondent in his brief challenges petitioner's credibility: "It is difficult to envision a witness who would be less worthy of this Court's trust than the petitioner in the present case." Specifically, respondent refers to petitioner's 1982 conviction for possession and sale of marijuana, and suggests that petitioner *326 deceived car rental agencies and landlords by utilizing fictitious names and addresses in the course of his business. We first address respondent's challenge to petitioner's credibility. Respondent's assertions generally center on the illegal nature of petitioner's business rather than any specific part of petitioner's testimony. Our function in this case is not, however, to judge the morality or legality of petitioner's actions. Rather, our role is to determine petitioner's correct income tax liability: the federal income tax is a tax on net income, not a sanction against wrongdoing. That principle has been firmly imbedded in the tax statute from the beginning. One familiar facet of the principle is the truism that the statute does not concern itself with the lawfulness of the income it taxes. Income from a criminal enterprise is taxed at a rate no higher and no lower than income from more conventional sources. * * * [Commissioner v. Tellier,383 U.S. 687, 691 (1966).] Petitioner filed timely Federal income tax returns in each of the taxable years *327 covered in this case and has reported the income from his marijuana sales. His testimony concerning his expenses and deductions was candid and forthright. We do not view respondent's allegations as impeaching petitioner's testimony. "Mere suspicion cannot offset thoroughly credible testimony." Matut v. Commissioner,88 T.C. 1250, 1257 (1987), affd. in part, vacated in part, and remanded on other issues 858 F.2d 683 (11th Cir. 1988) (testimony of a convicted money launderer). Therefore, we shall treat petitioner no differently in this tax proceeding because he was engaged in an illegal business. We agree with respondent, however, that the evidence presented in this case does not support petitioner's claimed cost of goods sold. We are unable to evaluate the probative value of petitioner's underlying books and records because they are not before us. Aldi's testimony merely proves that the underlying books and records existed and were consistent with the sales records, which are also not before us. Aldi did not observe the purchases or the transactions involving *328 petitioner where money changed hands between petitioner and his suppliers and customers. Moreover, the summaries that petitioner introduced into evidence are of little probative value because they were not prepared contemporaneously or in any regular manner. Other than petitioner's testimony, no evidence was presented to support the particular purchase prices reflected in the summaries. Petitioner's testimony provided little more than a reiteration of his written summaries, and accordingly, bears little weight. Petitioner produced no supporting documents such as invoices or receipts, nor did he call his suppliers to testify. It is unlikely, however, that petitioner's suppliers would testify truthfully if called. Accordingly, we do not necessarily draw a negative inference from petitioner's refusal to identify his suppliers and call them as witnesses. But cf. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Nevertheless, petitioner is not relieved of his obligation to establish his case. Petitioner argues further in support of the accuracy of his records that they were used to keep an accurate *329 record of amounts owed to his suppliers and owed to him by his customers. Petitioner cites several cases involving bookmakers [3] in support of the proposition that "whereas taxpayer's otherwise unverified records are used by him as the basis for financial transactions, such use verifies the records." Petitioner argues that he used his books and records to keep track of the amounts he owed his suppliers, as well as the money his dealers owed him. The instant case is distinguishable from the cited cases, however, because petitioner has not proved that his records were used in such a manner. Indeed, the records themselves are not in evidence. For the above reasons, we hold that petitioner has failed to prove that his cost of goods sold was as he reported. Although petitioner has not proved the correctness of his reported cost of goods sold, we note several errors in respondent's determination. Respondent based his determination on the premise that *330 marijuana dealers base their sales price on a certain percentage mark-up over the cost of the drug. In support of the 45 percent mark-up used in the notice of deficiency, respondent's expert witness, Agent Milton Smilek (Smilek) of the Drug Enforcement Agency, testified that there is a typical markup of at least 50 percent over cost for a dealer buying marijuana in lots of hundreds of pounds and selling in lots between one and one hundred pounds. Petitioner, on the other hand, testified that he priced his marijuana based upon what he felt was a marketable price, rather than a percentage mark-up. One of petitioner's expert witnesses, Daniel Poore (Poore), the former head of a major drug operation who was familiar with the wholesale marijuana market for the years at issue, also testified that marijuana was not sold based on a percentage mark-up. Respondent urges us to disregard the testimony of petitioner and his "rogues gallery of expert witnesses" because of their convictions on drug charges. Respondent bases his position solely on petitioner and Poore's drug convictions. We disagree with respondent. Both petitioner and Poore testified candidly and were cross-examined by respondent. *331 See Matut v. Commissioner, supra.Under the unusual nature of the circumstances of this case, i.e., income from marijuana sales, Poore's drug conviction and his candid testimony reflecting his personal knowledge of the wholesale marketing of marijuana on the east coast and elsewhere during the years at issue tended to support his qualification in this market as an expert witness. We find the testimony of Poore and petitioner as to the cost of marijuana being variable and a function of the market to be more plausible than Smilek's regarding the use of a fixed, unchanging percentage markup. Accordingly, we hold, limited to the particular facts of this proceeding, that respondent's determination of petitioner's cost of goods sold is incorrect. Taking into account all of the pertinent evidence, we think that a reasonable cost of goods sold for petitioner is $ 218,291, $ 896,695, and $ 761,972 for the years 1978, 1979, and 1980, respectively. In computing the cost of goods sold, we have also considered a study introduced into evidence -- "The Supply of Drugs to the U.S. Illicit Market From Foreign and Domestic Sources in 1980" by the National Narcotics Intelligence *332 Consumers Committee (the "Narcotics Study"). The Narcotics Study reports that a representative price for a U.S. Distributor of Colombian marijuana falls between $ 265 and $ 415 (between $ 1,000 and $ 1,900 for sinsemilla). Because we have no way of ascertaining at what wholesale level petitioner operated within, we used the lowest cost in Narcotics Study's range, $ 265 for Colombian marijuana, and $ 1,000 for sinsemilla. Furthermore, although the Narcotics Study covered 1980, the record shows that the costs of marijuana did not vary much from the wide ranges reflected in the Narcotics Study for 1980 during the years at issue. Thus, we find the Narcotics Study's prices applicable for all of the years at issue. Our computation is based on the following poundage figures: 823.74, 3,048.76 (120.78 of which was sinsemilla), and 2,875.366 for the years 1978, 1979, and 1980, respectively. These poundage figures are from petitioner's summary, which figures respondent apparently does not dispute. Ordinary and Necessary Business Expenses
We next address whether petitioner was entitled to deduct his claimed ordinary and necessary business expenses. *333 Section 162(a) generally allows a deduction for all the ordinary and necessary expenses paid in carrying on any trade or business. Deductible business expenses include "ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business." Sec. 1.162-1(a), Income Tax Regs. Whether an expense is ordinary and necessary is a question of fact. Commissioner v. Heininger,320 U.S. 467, 475 (1943); Walliser v. Commissioner,72 T.C. 433, 437 (1979). "Ordinary" has been interpreted to mean that an expense must bear a reasonably proximate relationship to the operation of the taxpayer's trade or business. Deputy v. du Pont,308 U.S. 488, 495-496 (1940); Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 660 (1962). "Necessary" has been interpreted to mean that the expense must be "appropriate" or "helpful" to the taxpayer's trade or business. Commissioner v. Henninger, supra at 471; Carbine v. Commissioner,83 T.C. 356, 363 (1984), *334 affd. 777 F.2d 662 (11th Cir. 1985). At the outset we note that section 280E, which disallows deductions for amounts paid in carrying on any illegal drug business, is not applicable to the years at issue. Section 351(e), Pub L. 97-248, 96 Stat. 640. Except as otherwise noted, the parties have stipulated to the payment of the disputed amounts. Respondent argues, however, that petitioner has failed to establish the ordinary and necessary nature of his claimed deductions. Respondent's determinations are presumed correct, and accordingly, petitioner bears the burden of proof. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Furthermore, deductions are a matter of legislative grace and each statutory requirement must be satisfied before the deduction can be allowed. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Rental Expense
Section 162(a)(3) generally allows a deduction for, inter alia, rental payments made for the use of property in a trade or business. Petitioner testified how he used stash houses for the *335 storage of his product. Petitioner's testimony reflected no personal use by him of the stash houses. Petitioner further testified that the per-month rentals for stash houses during the years at issue ranged from $ 500-$ 1,500. Petitioner's testimony was candid and forthright. Petitioner needed a safe place to count and store the marijuana he sold in his business. Moreover, we think petitioner's testimony regarding the range of rentals during the years at issue was reasonable. Since the parties have stipulated to the payment of the amounts at issue, the only issue left for our decision is whether the amounts were ordinary and necessary, which we hold they were. Service Fees
Ordinary and necessary business expenses include reasonable compensation for services actually rendered. Sec. 1.162-7(a), Income Tax Regs.[4] Petitioner testified that he paid the service fees to persons who guarded and picked up and delivered his marijuana. The fees paid were per pound guarded or picked up and delivered, as applicable. Furthermore, we think it unlikely that petitioner *336 could have engaged in an operation as substantial as his without hiring additional help. Since the parties have stipulated to the amounts at issue, we hold petitioner is entitled to deduct the full amount claimed for 1979. For 1980, however, respondent has only stipulated to payment of $ 6,905.14. Because petitioner has not proved payment of the total amount claimed on his return, $ 9,405.14, we only allow him a deduction to the extent of the stipulated amount. Travel and Entertainment
The next issue before us is petitioner's claimed deductions for travel and entertainment expenses, which respondent disallowed entirely. Section 162(a)(2) generally provides that deductible ordinary and necessary expenses include traveling expenses and meals while away from home in the pursuit of a trade or business. Deductions for entertainment expenses are limited, however, by section 274(a) which requires that the entertainment *337 activity be either directly related to, or associated with (if directly preceding or following a substantial and bona fide business discussion) the active conduct of the taxpayer's business. Deductions for traveling expense and entertainment are further conditioned upon satisfying the substantiation requirements of section 274(d), which requires that a taxpayer substantiate "by adequate records or by sufficient evidence corroborating his own statement": (A) the amount of expense, (B) the time and place of the travel or entertainment, (C) the business purpose of the expense, and (D) the business relationship to the taxpayer of the person entertained. The regulations define "adequate records" as a diary, account book, or similar record sufficient to establish each of the above elements. Sec. 1.274-5(c)(2)(i), Income Tax Regs. Furthermore, the "record must be prepared or maintained in such manner that each recording of an element of an expenditure is made at or near the time of the expenditure." Sec. 1.274-5(c)(2)(ii), Income Tax Regs.
Petitioner testified that his travel and entertainment expenses were related to *338 business discussions with suppliers and customers. He further testified that he kept diaries of these expenditures. Like his other records, petitioner kept his diaries in code. Aldi testified that he reviewed petitioner's expense diaries. Aldi further testified that he excluded any expenses that he felt were unreasonable. The diaries themselves, however, are not in evidence. Petitioner's and Aldi's testimony merely shows that petitioner did pay some travel and entertainment expenses that pertained to his marijuana business, and that he maintained some sort of diary. We are unable to ascertain, however, whether the specific substantiation requirements of section 274(d) and the regulations thereunder have been met. [5] Accordingly, we hold for respondent on this issue. Miscellaneous and Office Expenses
Deductible ordinary and necessary expenses include payments for supplies and incidental repairs. *339 Sec. 1.162-1(a), Income Tax Regs. Petitioner testified that his miscellaneous expense represented hardware purchased for his stash houses, photocopying expenses, miscellaneous magazines, and expenses for setting up false identities. Petitioner also testified that his office expense related to the purchase of various stationery items. We found petitioner's testimony credible and consistent with the description of his business and that the claimed expenses were attributable to his marijuana business. Accordingly, we allow petitioner full deduction for his claimed miscellaneous expense for 1979 in the amount of $ 7,679, which the parties have stipulated to as having been paid. With regard to petitioner's claimed 1979 office expense in the amount of $ 1,782, respondent only stipulated to a payment of $ 1,753. Because petitioner has not proved payment in addition to the stipulated amount, we only allow him deduction to that extent. Addition to Tax under Section 6653(a)
We now address the final issue of whether petitioner is subject to the addition to tax under section 6653(a). *340 Section 6653(a) provides for an addition to tax of 5 percent of any underpayment if any part of the underpayment is due to negligence or the intentional disregard of rules or regulations. Negligence under section 6653(a) is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Petitioner argues that he maintained adequate books and records to support the cost of goods sold and various business expense deductions at issue in this case. Petitioner also points to his use of a certified public accountant in reviewing his underlying records. Respondent contends that petitioner exaggerated his costs, and accordingly, was clearly negligent. Respondent's determination of negligence is presumed correct, and petitioner bears the burden of proving otherwise. Hall v. Commissioner,729 F.2d 632, 635 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Burwell v. Commissioner,89 T.C. 580 (1987); Luman v. Commissioner,79 T.C. 846, 860-861 (1982) *341 ; Rule 142(a). After reviewing the record in this case, we hold that petitioner has failed to prove that his underpayment was not due to negligence or intentional disregard of the rules or regulations. Moreover, petitioner's maintenance of coded books constitutes a failure to keep adequate books and records as required by section 6001. While petitioner may have had his reasons for coding his books, we cannot say that this was reasonable. In addition, respondent was unable to determine petitioner's tax liability from petitioner's coded books and records because respondent could not verify the purchases at issue. We also reject petitioner's argument that his retaining a certified public accountant to prepare his tax returns constituted reasonable care. Petitioner's use of his accountant does not, however, negate his coded books. Accordingly, we hold that the section 6653(a) addition to tax for the years at issue is proper. In light of the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. These service fees for 1979 represented legal fees, which have since been conceded by respondent. In the jointly filed stipulation of facts, respondent conceded that $ 5,575 of the $ 6,075 disallowed amount for 1978 was deductible. At trial, respondent conceded the remaining $ 500 of disallowed service fees. The service fees for 1979 and 1980, however, remain at issue.↩
3. Nemmo v. Commissioner,24 T.C. 583 (1955), revd. sub nom. on other issue Polizzi v. Commissioner,247 F.2d 875 (6th Cir. 1957); Rainwater v. Commissioner,23 T.C. 450↩ (1954).
4. See also Carter v. Commissioner,T.C. Memo. 1984-443↩ (allowing a deduction to a drug smuggler for compensation paid to members of his crew).
5. See also Edmondson v. Commissioner,T.C. Memo. 1981-623 (disallowing travel and entertainment expenses of drug dealer for failing to comply with section 274(d)↩).